STATE v. BOBBY LEE GOINES.

(Filed 17 April 1968.)

**1. Rape § 17—**

In order to constitute an assault with intent to commit rape, it is not necessary that the intent continue throughout the assault, but it is sufficient if at any time during the assault the defendant intended to accomplish his purpose notwithstanding any resistance on the part of the prosecutrix.

**2. Criminal Law § 71—**

Testimony of the prosecutrix that the defendant put his face close to hers, "trying to kiss me," *is held* competent as a shorthand statement of fact.

**3. Evidence § 35; Criminal Law § 33—**

Testimony by the prosecutrix that during an assault upon her the occupants of a nearby apartment building were yelling for her assailant to free her *is held* competent as part of the *res gestæ*.

**4. Criminal Law §§ 104, 106—**

Upon motion to nonsuit, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom, and nonsuit should be denied where there is sufficient evidence, direct, circumstantial, or both, from which the jury could find that the offense charged has been committed and that defendant committed it.

**5. Rape § 18—**

Evidence in this case *is held* sufficient to be submitted to the jury on the issue of defendant's guilt of assault with intent to commit rape.

**6. Criminal Law § 168—**

A *lapsus linguæ* in the charge which is immediately corrected by the court so that the jury could not have been misled will not be held for prejudicial error.

**7. Criminal Law §§ 113, 163—**

A slight inadvertence in stating the contentions of the parties or in recapitulating the evidence must be called to the court's attention in time for correction.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Bowman, S.J.*, 28 August 1967 Special Criminal Session, WAKE Superior Court.

Criminal prosecution upon a bill of indictment charging defendant with assault with intent to commit rape upon one Mable Minnie Allen. The jury returned a verdict of guilty as charged. From a judgment of imprisonment in the State's prison for a term of not less than twelve nor more than fifteen years, defendant appeals.

The State's evidence tends to show that Mrs. Mable Allen, a widow, lived in the Vance Apartments at the corner of Edenton and Wilmington Streets in Raleigh. Christ Episcopal Church is located across Edenton Street from said apartments. Mrs. Allen is a clerk at the Sir Walter Hotel where she has worked for twenty years. She arrived home from work on July 18, 1967 at about 11:20 p.m. and took her little blind dog for a walk as was her custom each night. While standing in front of the apartment building about twelve feet from the steps where two large lights are located, one on each side of the steps, she saw a colored boy walking toward her. She was facing him, and when he reached a point beside her he pivoted and grabbed her around her arms and shoulders, pinning her arms down by her side. "I screamed as soon as he grabbed me. I was still on the sidewalk outside the Vance Apartments. . . . When he grabbed me and pinned my arms to my side, he turned towards the street from the sidewalk and I was screaming and he couldn't get through the cars . . . parked by the curb . . . on the side of the street that the Vance Apartments are on. So he lifted me up clear of the sidewalk, my feet, and walked down about two cars where there was an opening and he went through that opening and I was begging him to let me get my dog because he was blind. He never spoke, and somehow or other I got aloose from his clutches and fell down on the street. This was in Edenton Street, after I had gone between the cars. He got hold of me and started dragging me across the street. . . . He pulled me over the curb by Christ Church, which is directly in front of the Vance Apartments. . . . He pulled me across the curb and across the sidewalk, and into the church yard. I felt something hit me in the face, and I realized it was bushes. I was on my back and still screaming; I never stopped. When I was on the bush, I was on my back on the ground. He was dragging me on my side, which skinned my ankle and knee and elbow, hip, but when he got me to the bush, he turned me over on my back and held both of my arms down on the ground. I was flat on my back on the ground then. He was on top of me. My arms were like this and he was holding both arms down. I was begging him not to kill me. He never said a word, never opened his mouth. And during this time the people in the apart-

ments were screaming out the windows. There's nothing but young girls live over there, work around the . . . Capitol buildings, State buildings . . . they were screaming that they had called the police, to turn me aloose. He turned my left hand aloose and started — he dropped it down on my leg. It was . . . my left hand that he released. He was on top of me. He was kind of on his knees until he turned my hand aloose. He had both my legs together and he was across my body, and when he turned my hand aloose, he kind of fell down flat on my stomach. He put his face down close to mine, trying to kiss me, and with my left hand I turned my head away from him and I got my left hand under his chin and was pushing his face away. He drew his fist back and I was afraid he had a knife or something and I was pleading with him not to kill me. The people were still yelling in the building; all this time no car passed, which was a matter of minutes. He hit me with his fist. He hit my head on the left side. This was while his body was on my body. He put his right hand down on my left leg and started pulling at my clothes. I had on a shirt-waist dress. . . . He just started pulling and I heard my dress rip, and about this time is when the cars stopped and that is when he hit me. I blacked out for a second or two, and when I realized what was going on, he was gone. I don't really know when he left, but he left, and I crawled to the sidewalk . . . and this car had parked there and a young man was in it and I asked him to please help me. I stood up and he ran into the church yard. I told him a man had attacked me. . . . [B]y that time the people were there . . . and the police car came, several of them."

The prosecuting witness found her little dog and returned to her apartment. Two police officers came and asked her if she was able to go a short distance to identify a man they had found. A cab had been called to take her to the hospital, and she rode in the cab with two of the ladies who lived in the building. They followed a police car to a filling station at the corner of New Bern Avenue and Person Street, about three blocks from the Vance Apartments. Defendant Bobby Lee Goines was leaning over into the trunk section of a car parked there as if looking for something. When he straightened up and Mrs. Allen saw his face, she started screaming and identified him as the man who had attacked her. "When I saw the defendant on the sidewalk in front of the Vance Apartments and in the church yard, he had on shorts, kind of dark grey shorts, solid color, and a sport shirt that was checked, had small checks in it. He had on those same clothes when I saw him at the service station."

Mrs. Allen further stated: "I can absolutely identify State's Exhibit 3. It is a plaid sport shirt. It is the shirt the defendant had on

when he attacked me. He had on this shirt when I saw him at the service station."

Sergeant Ralph Johnson of the Raleigh Police Department received a call on the police radio at 11:26 p.m. to go to the Vance Apartments. He had received a description over the police radio of a colored male, including a description of the clothing he was wearing. After arriving at the church yard of Christ Church, he received additional description of Mrs. Allen's assailant. He went to the service station at the intersection of New Bern Avenue and Person Street and found seven or eight police officers already there along with six or seven white males, a service station attendant, the defendant and another colored male with a Mustang. Defendant was sitting about thirty feet off the street inside the service station lot with the trunk of his car, which is the hood really, open. He was bending over with his hands down in the motor doing something. He was wearing a shirt and a pair of shorts, State's Exhibits 2 and 3. From his knees down, he had several scratches on his legs and ankles, light scratches which appeared fresh. Officer Johnson spoke to defendant and asked him to straighten up. He did and at that time Mrs. Allen said "that's him" and started screaming. Defendant was thereupon placed under arrest.

At the close of the State's evidence, defendant moved for nonsuit which was denied. Defendant rested his case and renewed his motion for nonsuit which was again denied.

Defendant assigns as error (1) the admission of Mrs. Allen's statement that defendant was "trying to kiss her" during the assault; (2) permitting Mrs. Allen to testify that persons in the Vance Apartment building were yelling for defendant to turn her loose; (3) denial of defendant's motion for judgment of nonsuit; (4) the charge regarding the effect of defendant's plea of not guilty; and (5) inaccurate recapitulation of the evidence during the charge.

*Boyce, Lake & Burns by F. Kent Burns, Attorneys for defendant appellant.*

*T. W. Bruton, Attorney General, and James F. Bullock, Deputy Attorney General, for the State.*

HUSKINS, J. To constitute an assault with intent to commit rape, it is not necessary that the assailant retain such intent throughout the assault. It is sufficient if he at any time during the assault has an intent to gratify his passion upon the prosecutrix at all events, notwithstanding any resistance on her part. *State v. Petry*, 226 N.C. 78, 36 S.E. 2d 653; *State v. Williams*, 121 N.C. 628, 28 S.E. 405. "The

intent is necessarily an inference to be drawn from the defendant's acts, and it must be drawn by the jury and not by the judge, when there is any evidence." *State v. Mehaffey*, 132 N.C. 1062, 44 S.E. 107.

Defendant's first assignment of error is addressed to the statement of the prosecuting witness, admitted over his objection, that defendant put his face down close to hers, "trying to kiss me." The statement is admissible as a shorthand statement of fact. It is not error to permit a witness to testify that a hammer was in "good condition," *Watson v. Durham*, 207 N.C. 624, 178 S.E. 218; that a car was moving "real fast," *Benson v. Sawyer*, 257 N.C. 765, 127 S.E. 2d 549; that a stairway went up "as a corkscrew would," *Mintz v. Railway*, 236 N.C. 109, 72 S.E. 2d 38. An observer may testify to common appearances, facts and conditions in language which is descriptive of facts observed so as to enable one not an eyewitness to form an accurate judgment in regard thereto. *Tyndall v. Hines Co.*, 226 N.C. 620, 39 S.E. 2d 828.

The prosecuting witness testified over defendant's objection that the occupants of the Vance Apartments on the front entrance of the building "up to the third floor had raised their window and was yelling for him to . . . turn that woman aloose." This testimony is obviously competent as part of the *res gestæ*. "Exclamations or declarations spontaneously evolved by the event and relevant to the inquiry are a part of the *res gestæ*, and testimony thereof is competent as an exception to the hearsay rule." 3 Strong, N. C. Index 2d, Evidence § 35, and cases cited.

Failure of the court to nonsuit is defendant's third assignment of error. Motion to nonsuit requires the trial court to consider the evidence in its light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Cook*, 273 N.C. 377, 160 S.E. 2d 49; *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679; *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44. Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled. *State v. Norggins*, 215 N.C. 220, 1 S.E. 2d 533. The evidence in this case, when so considered, depicts a vicious assault on a prosecuting witness who positively identifies defendant as her assailant. There is substantial evidence of every material element of the offense, including intent. It was therefore a question for the jury.

Defendant assigns as error the following excerpt from the charge in parentheses: "Upon the defendant's arraignment under this bill of indictment, the defendant entered a plea of not guilty. (By his

plea of not guilty he not only denies that he is not guilty) — he denies that he is guilty of any crime with which he is charged, but he challenges and denies the credibility of the witnesses and the evidence upon which the State relies for conviction." This was a *lapsus linguæ* immediately corrected by the court so that the jury could not possibly have been misled. *State v. Withers,* 271 N.C. 364, 156 S.E. 2d 733. It was therefore harmless.

The prosecuting witness testified that during the assault and while defendant was on top of her, he started "pulling at my clothes." In reciting the evidence during the charge, the court used the words "pulling up her clothes" and "pulling up her dress" in lieu of the words actually used by the witness. Defendant assigns this as error.

Slight inadvertencies in recapitulating the evidence or stating contentions must be called to the attention of the court in time for correction. Objection after verdict comes too late. *State v. Cornelius,* 265 N.C. 452, 144 S.E. 2d 203; *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429; *State v. Holder,* 252 N.C. 121, 113 S.E. 2d 15; *State v. Adams,* 245 N.C. 344, 95 S.E. 2d 902. Even so, the evidence indicates defendant was trying to remove the clothing or get it in such position as not to interfere with his purpose. It seems immaterial whether he was "pulling up" or "pulling down" or "pulling at."

Defendant has had a fair trial, free from prejudicial error, and the verdict and judgment entered below will be upheld.

No error.

SHARP, J., took no part in the consideration or decision of this case.