STATE OF NORTH CAROLINA v. DWAIN EDWARD WRIGHT AND CECIL LEON GLENN

No. 50

(Filed 13 December 1972)

1. **Constitutional Law § 31; Criminal Law § 95— implicating statement of codefendant — right to cross-examination of declarant — admission proper**

Testimony by an officer with respect to a statement made to him by one defendant which implicated a codefendant in the murder for which defendants were on trial was properly admitted where the codefendant had an opportunity to cross-examine the defendant making the statement but failed to do so and where the officer had previously testified, without objection, to the implicating statement.

2. **Homicide § 24— felony-murder rule — sufficiency of evidence to support instruction**

Evidence was sufficient in a first degree murder case to support an instruction on the felony-murder rule where such evidence tended to show that defendants and one Chavis left defendant Wright's home with a common intent to commit robbery against an undetermined person, that defendant Glenn and Chavis discussed robbing a cab driver in the presence of defendant Wright and that the three engaged a cab to take them to a given destination after which Glenn or Wright shot and killed the cab driver with Wright's pistol. G.S. 14-17.

3. **Criminal Law § 86— cross-examination of defendant — inquiries concerning prior convictions**

Inquiries made of defendant Wright on cross-examination concerning prior convictions for unrelated criminal offenses were admissible for purposes of impeachment.

4. **Criminal Law §§ 80, 169— recorded past recollection admissible — admission of similar testimony without objection**

Testimony of record of a pawnshop employee of sale of ammunition to one D. E. Wright several days before the murder of a cab driver with a pistol requiring the same caliber ammunition was admissible as a recorded past recollection though the employee testified that he did not recognize defendant Wright and that he had no independent recollection of the transaction apart from his records.

5. **Homicide § 21— sufficiency of evidence to withstand nonsuit**

Evidence in a first degree murder prosecution was sufficient to withstand motion for nonsuit where such evidence tended to show that the two defendants and one Chavis were at a bus station armed with a pistol belonging to defendant Wright, that after discussing the robbery of a cab driver, Wright engaged a cab to a given destination, that bullets found in deceased cab driver's body were fired from Wright's pistol, that Wright led police officers to the place where the gun was hidden after the crime and that defendant Glenn told an officer that Wright shot the man.

6. **Criminal Law §§ 112, 114, 168— jury instructions — reasonable doubt as possibility of innocence — caution against jurors taking strong individual positions — no error**

The trial court did not commit prejudicial error in its instructions to the jury when it cautioned the jurors against taking strong individual positions from the outset of their deliberations and defined reasonable doubt as a possibility of innocence.

7. **Constitutional Law § 36; Criminal Law § 135— first degree murder — sentence of life imprisonment — possibility of death sentence not prejudicial**

Where the jury returned a verdict recommending life imprisonment in a first degree murder case, the defendants had no standing to challenge the constitutionality of the statute under which they were indicted providing for punishment of death, nor could defendants complain of the court's instruction to the jury that one of the possible verdicts was first degree murder, resulting in punishment of death.

8. **Criminal Law § 113— jury instructions supported by evidence**

Statements with respect to defendant Wright made by the trial judge in his recapitulation of the evidence to the jury were fully supported by the evidence.

APPEAL by defendants from *Braswell, J.,* at the 2 April 1972 Regular Criminal Session of WAKE Superior Court.

Defendants Dwain Edward Wright and Cecil Leon Glenn were indicted in separate bills of indictment for the murder of Willard Pearson Moore on 9 February 1972. Defendants entered pleas of not guilty, and the cases were consolidated for trial.

The evidence for the State tends to show: Michael L. Chavis met defendant Glenn near the recreation center in Chavis Heights, Raleigh, around 8 p.m. on 8 February 1972. They went to Glenn's grandmother's home nearby and asked her for money. She refused them and they went to defendant Wright's home. Glenn asked Wright for money but Wright claimed that he had none. While there Glenn said: "Let's rob a drunk or fast-talk somebody out of some money." Thereafter, the three left Wright's house. Wright was carrying a pistol. They went to Gail's Tavern where they remained for a substantial period of time shooting pool, talking with friends, and listening to the jukebox. Around closing time they left accompanied by Glenn's girl friend. The defendants and Chavis walked the girl home, and Wright then suggested that they go to the bus station. There they observed an elderly man who appeared to be intoxicated. The man had a yellow slip in his hand which they thought was a check or a bus ticket. Glenn said that "whatever it is we knock him off and snatch it he couldn't catch us no way." However, they did not take the yellow slip from him.

Later defendant Wright saw an individual in the station named David Watts, who was in a juvenile detention center at the same time Wright and Chavis were there. Wright asked Chavis to jump on the boy and ask him if he had any money. Chavis refused. Wright then went up to Watts and asked him if he could loan him some money. An argument ensued and Watts and an individual with him left the station. Glenn then noticed an overnight case sitting under a bubblegum machine and told Wright to go get it. Wright got the overnight case, and the three men then left the bus station by the side door. Wright suggested that they take a taxi, and while outside they saw several taxis but did not take one. It was cold so they went back inside the bus station. Wright went outside several times, and the second or third time he returned and said there was a taxi across the street.

The three men went across the street and got in the taxi driven by the deceased, Willard Pearson Moore. They rode to Haywood Street where at the request of Chavis the taxi was stopped. Chavis got out, went into the front yard of a house where a girl named Sheila White lived, and called her name. Receiving no response, Chavis returned to the taxi and rode with the defendants to Chavis Heights. There the taxi pulled in between Dare Terrace and a nursery school. Chavis got out of

the taxi again and began walking away. When he was approximately forty or forty-five feet away from the taxi, he noticed the taxi had not pulled out from the curb and he turned around and looked back. He saw Glenn standing on the outside of the taxi pointing a gun at the deceased who was sitting in the driver's seat. Wright was standing on the left side of the taxi near the rear fender or rear door. Glenn shot the driver once; Chavis heard but did not see a second shot fired. After the shooting Chavis began walking away from the scene. Wright and then Glenn caught up with him, and the three went to Wright's house where they spent the night. On the way to Wright's house Glenn stated that he had shot the deceased but did not know whether he had actually killed him.

The police arrived at the scene of the shooting at 2 a.m. and discovered the driver of the taxi wounded but still alive. The overnight case taken from the bus station was wedged under the rear axle of the taxi. The left front window of the taxi was partially rolled down, the left rear door was open, and the motor was running. The driver subsequently died as a result of a gunshot wound in his chest. The day after the shooting defendant Wright gave a pistol to a friend named Juanita Green and asked her to keep it for him. She hid it under a nearby house. The next day the police went with Wright to see Miss Green and at Wright's request she gave the police the pistol which Wright had left with her. Bullets found in the body of the deceased and empty shells found in the taxi were fired from this pistol.

Defendant Glenn offered evidence which tends to show that he and the witness Chavis had gotten out of the taxi and were walking away when they heard the two shots. No one other than Wright was in the vicinity.

Defendant Wright offered evidence which tends to show that he and the witness Chavis had gotten out of the taxi and were walking away when he saw the defendant Glenn shoot the deceased.

Other evidence pertinent to decision will be stated in the opinion.

The jury returned a verdict of guilty of murder in the first degree with a recommendation of life imprisonment as to each defendant. From sentences imposed in accordance therewith, defendants appealed.

*Attorney General Robert Morgan and Assistant Attorney General Charles M. Hensey for the State.*

*Tharrington & Smith by Roger W. Smith for defendant Wright, appellant.*

*Robert P. Gruber for defendant Glenn, appellant.*

MOORE, Justice.

[1] Detective J. O. Stoudenmire testified without objection that after his arrest Wright told him that he overheard a conversation at the bus station between Chavis and Glenn in which they discussed robbing a taxi driver. On cross-examination Stoudenmire testified over Glenn's objection that Wright said Glenn and Chavis had talked about robbing a cab driver. Glenn contends that it was error to allow this testimony since it relates to a statement by a codefendant which implicates Glenn in the crime, citing *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968); *Roberts v. Russell,* 392 U.S. 293, 20 L.Ed. 2d 1100, 88 S.Ct. 1921 (1968); and *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968).

In *Bruton* one Evans and Bruton were tried jointly for armed postal robbery. Evans did not testify but a postal inspector was allowed to testify to Evans' oral confession that Evans and Bruton had committed the robbery. The Supreme Court of the United States held that since Evans did not testify and was not subject to cross-examination, Bruton's right of confrontation on cross-examination under the Sixth Amendment was violated even though the trial court instructed the jury not to consider the confession against Bruton. In *Roberts,* under subtantially similar facts, the Court in a *per curiam* opinion followed the rule as stated in *Bruton.* In *Fox* this Court, with reference to the holding in *Bruton* and *Roberts,* stated:

> "The result is that in joint trials of defendants it is necessary to exclude extrajudicial confessions unless all portions which implicate defendants other than the declarant can be deleted without prejudice either to the State or the declarant. If such deletion is not possible, the State must choose between relinquishing the confession or trying the defendants separately. The foregoing pronouncement presupposes (1) that the confession is inadmissible as to the codefendant (see *State v. Bryant, supra* [250 N.C. 113,

108 S.E. 2d 128]), and (2) that the declarant will not take the stand. *If the declarant can be cross-examined, a co-defendant has been accorded his right to confrontation.* See *State v. Kerley, supra* [246 N.C. 157, 97 S.E. 2d 876] at 160, 97 S.E. 2d at 879." (Emphasis added.)

See also *State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858 (1971).

*Bruton, Roberts,* and *Fox* are factually distinguishable from the present case, since Wright testified and was subject to cross-examination. Although Stoudenmire's testimony concerning Wright's statement came during his rebuttal testimony after Wright had testified, Glenn had the right—which he did not pursue—to ask the court's permission to recall Wright for further cross-examination. In the absence of such request, Glenn waived his right to further cross-examine Wright. Furthermore, Stoudenmire had previously testified, without objection, that Wright told him "Mike and Cecil discussed robbing the cab driver." An exception is waived when other evidence of the same import is admitted without objection. *State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633 (1971); *Glace v. Pilot Mountain,* 265 N.C. 181, 143 S.E. 2d 78 (1965); *Adams v. Godwin,* 254 N.C. 632, 119 S.E. 2d 484 (1961); 1 Strong, N. C. Index 2d, Appeal and Error § 43, p. 196. This assignment is without merit.

[2]    Defendants contend that the evidence in this case did not warrant an instruction on the felony-murder rule. G.S. 14-17 provides in pertinent part that "a murder which . . . shall be committed in the perpetration or attempt to perpetrate . . . robbery . . . shall be deemed to be murder in the first degree. . . . " See *State v. Hairston* and *State v. Howard* and *State v. McIntyre, supra; State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666 (1971); *State v. Lee,* 277 N.C. 205, 176 S.E. 2d 765 (1970); *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435 (1969). In such cases the law presumes premeditation and deliberation, and the State is not put to further proof of either. *State v. Bunton,* 247 N.C. 510, 101 S.E. 2d 454 (1957); *State v. Mays,* 225 N.C. 486, 35 S.E. 2d 494 (1945). The State's evidence in the instant case tends to show that the two defendants and Chavis, armed with a pistol belonging to Wright, left Wright's home on the evening of 8 February 1972 with a common intent to commit robbery against an undetermined person. During the course of the evening, defendants contemplated rob-

bing an elderly man and a young boy. Wright actually stole an overnight case which was sitting in the bus station. The evidence further shows that in the presence of Wright, Glenn and Chavis discussed robbing a cab driver, following which the three engaged a cab to take them to Chavis Heights, and that after arriving there Glenn or Wright shot and killed the deceased with Wright's pistol.

In *State v. Smith*, 221 N.C. 400, 405, 20 S.E. 2d 360, 363-64 (1942), it is said:

> " . . . If many engage in an unlawful conspiracy, to be executed in a given manner, and some of them execute it in another manner, yet their act, though different in the manner, is the act of all who conspired. [Citations omitted.]

> "And the liability also extends to acts not intended or contemplated as a part of the original design, but which are a natural or probable consequence of the unlawful combination or undertaking. [Citations omitted.] The general rule is, that if a number of persons combine or conspire to commit a crime, or to engage in an unlawful enterprise, each is responsible for all acts committed by the others in the execution of the common purpose which are a natural or probable consequence of the unlawful combination or undertaking, even though such acts are not intended or contemplated as a part of the original design. [Citations omitted.]"

The evidence was sufficient to support a finding by the jury that defendants and Chavis had formed a conspiracy to rob the taxi driver Moore, and that in attempting to perpetrate this crime Glenn or Wright shot and killed Moore. Under these facts, each of the defendants is guilty of murder in the first degree. On this evidence Wright and Glenn were not only coconspirators but both were actually present, aiding and abetting in the crime charged, and were therefore principals. *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970); *State v. Johnson*, 272 N.C. 239, 158 S.E. 2d 95 (1967). This assignment is overruled.

[3]   During the course of his cross-examination of Wright, the solicitor asked him about his prior convictions. Defendant's counsel objected; the jury was excused, and all counsel approached the bench. The court was shown a card held by the

solicitor which showed various charges against Wright. The solicitor stated to the court, however, that he did not care to ask about any of the charges if in fact defendant had not been convicted, and that he would confine his examination to the charges on which defendant had been convicted. After a conference between counsel for Wright and the solicitor, the jury returned and Wright was only questioned about his actual convictions. This assignment is without merit. For impeachment purposes a witness, including the defendant in a criminal action, may be asked on cross-examination whether he has been convicted of unrelated criminal offenses. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971).

[4]    An employee of a local pawnshop, Jessie Murchison, testified that he made a record of a sale of 380 ammunition on 4 February 1972 to one D. E. Wright of Raleigh, North Carolina, whose Social Security number was 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 and whose date of birth was 7 August 1951. This ammunition was the same caliber as defendant Wright's pistol. On cross-examination Murchison testified that he did not recognize Wright and that he had no independent recollection of the transaction apart from his records. Defendant contends that it was error to admit this testimony. Murchison's record was admissible as a "recorded past recollection." Stansbury, North Carolina Evidence § 33 (2d Ed. 1963), and cases therein cited. Moreover, this testimony in no way prejudiced Wright since Wright himself testified later in the trial that he did buy this ammunition from Murchison. *State v. McDaniel,* 274 N.C. 574, 164 S.E. 2d 469 (1968).

[5]    Wright assigns as error the court's overruling his motion for judgment as of nonsuit. In testing its sufficiency the evidence must be considered in the light most favorable to the State. Contradictions and discrepancies even in the State's evidence are matters for the jury. *State v. Dawson,* 281 N.C. 645, 190 S.E. 2d 196 (1972); *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1972). Here the evidence for the State tends to show that the two defendants and Chavis were at the bus station armed with a pistol belonging to Wright, and that after some discussion concerning the robbery of a cab driver, Wright engaged a cab and told the driver where to go. There was also evidence that the bullets found in the body of the deceased and the empty shell cases found in the cab were fired from Wright's pistol, and that Wright led the police officers to the place where the gun was hidden after the crime. Without

objection, Glenn testified that he told Officer Heath: "I did not shoot the man. Dwain [defendant Wright] shot the man." This evidence, together with other offered for the State, was sufficient to withstand defendant Wright's motion for judgment as of nonsuit.

[6]   Defendants assign as error several portions of the trial judge's instructions to the jury. They contend that it was improper for the trial judge (1) to caution the jurors against taking strong individual positions from the outset of their deliberations, and (2) to define "reasonable doubt" as a possibility of innocence.

The trial judge's caution against strong individual positions is taken from California Jury Instructions Criminal (CALJIC, 3d Ed.), a publication of West Publishing Company. The California courts have approved substantially the same instruction as the one given in this case. *People v. Moraga*, 244 Cal. App. 2d 565, 53 Cal. Rep. 563 (1966) ; *People v. Selby*, 198 Cal. 426, 245 P. 426 (1926). In *State v. Bryant, Holloman and White*, 282 N.C. 92, 191 S.E. 2d 745 (1972), this Court specifically held that this instruction did not constitute prejudicial error. See also *State v. Pugh*, 183 N.C. 800, 111 S.E. 849 (1922). In *Bryant, Holloman and White* this Court also held that defining "reasonable doubt" as a possibility of innocence not only was not reversible error but constituted an instruction more favorable to the defendant than the usual definitions such as "fully satisfied," "entirely convinced," or "satisfied to a moral certainty." These contentions, therefore, are without merit.

[7]   The defendants assign as error the failure of the court to grant their motion to quash the bill of indictment asserting that the statute, G.S. 14-17, supporting the indictment is unconstitutional. They also contend that it was error for the court to instruct the jury that one of the possible verdicts was first degree murder, resulting in punishment of death. In disposing of a contention similar to these in *State v. Davis*, 282 N.C. 107, 191 S.E. 2d 664 (1972), this Court said:

"The Supreme Court of the United States in *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972), held that the imposition of the death penalty, under certain state statutes and in the application thereof, was unconstitutional. That decision did not affect the conviction but only the death sentence. *State v. Westbrook*, 281 N.C.

748, 191 S.E. 2d 68 (1972) ; *State v. Doss*, 281 N.C. 751, 191 S.E. 2d 70 (1972) ; *State v. Chance*, 281 N.C. 746, 191 S.E. 2d 65 (1972) ; *State v. Miller*, 281 N.C. 740, 190 S.E. 2d 841 (1972) ; *State v. Hamby and Chandler*, 281 N.C. 743, 191 S.E. 2d 66 (1972)."

Furthermore, the *Furman* case is without significance when the jury returns a verdict recommending life imprisonment. In that situation the defendant has no standing to raise the constitutionality of the death penalty or of a statute because it provides for that punishment. *State v. Bryant, Holloman and White, supra*. These assignments are without merit.

[8]   Defendant Wright in his assignments of error Nos. 7 and 11 asserts that the trial judge in his recapitulation of the evidence to the jury made material misstatements of the facts in the case. Two such misstatements are alleged by the defendant. The first is as follows: " . . . that at that time the defendant Wright was by the left rear fender or left rear door, which was at that time open." Secondly: "There is evidence which tends to show from the defendant Glenn that it was the defendant Wright who fired the shot at the taxicab driver, Willard Pearson Moore." A review of the record of this case indicates that in both instances the statements complained of were fully supported by the evidence. These assignments are, therefore, overruled.

Other assignments of error have been carefully considered but are without merit.

For the reasons indicated, the verdicts and judgments will not be disturbed.

No error.