STATE OF NORTH CAROLINA v. WILLARD WARREN, JR.

No. 14

(Filed 6 April 1976)

1. **Criminal Law §§ 89, 146— improper corroborative evidence — failure to object at trial — new trial awarded on appeal**

    Defendant in a first degree murder prosecution is entitled to a new trial since the trial court erred in allowing corroborative testimony by a witness which was actually additional and contradictory to the testimony it was intended to corroborate, and the Supreme Court could take cognizance of the error *ex mero motu* in the absence of objection by defendant's counsel at trial, since this is a ·capital case.

2. **Homicide § 21— murder in perpetration of robbery — sufficiency of evidence**

    Evidence was sufficient to go to the jury on the charge of murder in the first degree, a murder committed in the perpetration of a robbery, where such evidence tended to show that the victim died of multiple injuries inflicted by both blunt and sharp objects, defendant admitted that he and his brother had a 2 x 4 piece of lumber and a knife when they decided to rob their victim, that the victim "bucked up on them," and that they took $18.36 from the victim, cleaned their hands when they were through and went to meet their companion before he returned to the scene of the crime.

3. **Constitutional Law § 36; Homicide § 31— first degree murder — death penalty — no cruel and unusual punishment**

    Imposition of the death penalty upon a conviction of first degree murder does not result·in cruel and unusual punishment.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Thornburg, J.,* at the 7 July 1975 Session of HAYWOOD Superior Court.

On an indictment, proper in form, defendant was charged with the first degree murder of Leo Jack Clark. The jury found defendant guilty as charged and a sentence of death was imposed.

The State offered evidence tending to show the following: Leo Jack Clark was a resident of a rest home in Waynesville, North Carolina. On 4 February 1975, Clark ate lunch at the rest home and then left for town around 1:00 p.m. with about $18.00 in his possession. When Clark failed to return for the evening meal, normally served between 4:00 and 5:00 p.m., Mary L. Caldwell, the operator of the rest home, notified the police. Clark's body was found on the morning of 5 February 1975 inside the abandoned Pure Oil bulk plant near the railroad tracks in Waynesville. The floor of the building was littered with debris, papers, and dirt, and there was blood on the littered paper and the wall. The victim's wallet was empty.

Dr. Robert S. Boatwright, an expert in pathology, examined the body and found numerous injuries, including abrasions about the head, a broken jaw, broken teeth, fractures of the right wrist and left lower leg, a broken finger on the left hand, surface wounds on the chest, and internal injuries. Clark died as the result of these multiple injuries.

Further evidence for the State tended to show that the deceased had been seen by Cathy Trummell, an employee of the rest home, between 3:00 and 4:00 p.m. on 4 February on the street between the bulk plant and the rest home, walking toward the rest home. Barbara Mercer saw defendant talking to Reeves Webb on the street around 2:45 p.m. on 4 February. Defendant, his brother Harold, and Reeves Webb later came to Barbara Mercer's house and drank some wine. Her son took defendant home around 4:00 p.m. Verlin Stewart saw defendant on the gravel road leading to the bulk plant at approximately 4:10 p.m. Reeves Webb met defendant, defendant's brother and Clark near the railroad tracks on the afternoon of 4 February. Clark gave Webb money to get more wine from the A & P Store. When Webb returned with the wine, he met defendant and his brother walking up the street from the general direction of the bulk plant but Clark was not with them. Webb then walked home, arriving there around 4:00 p.m.

Curtis Boyd Wyatt was arrested on 17 February 1975 on breaking and entering charges and incarcerated in the Haywood County Jail. While in jail on 25 February 1975, he met defendant who had been arrested for public drunkenness. Defendant told Wyatt that he met Reeves Webb and Clark coming down the railroad tracks and drank wine with them in an old building until the wine ran out. Defendant then stated that the de-

ceased gave Reeves Webb a dollar to go to the A & P for some more wine. While Webb was gone, defendant and his brother Harold decided to rob the deceased but he "bucked up," and at the time Harold had a 2 x 4 and defendant had a knife. Defendant further stated that they took $18.36 from the deceased and that after they got through, they cleaned their hands and decided to meet Webb up the street before he returned with the wine. Wyatt repeated the story to SBI Agent Dan Crawford, and defendant was arrested on 27 February 1975.

Defendant offered evidence tending to show: SBI Agent Dennis J. Mooney performed fingerprint comparisons on the evidence gathered from the scene of the crime. Five identifiable fingerprints were found, four being identified as those of the deceased and one remaining unidentified. No prints of the defendant or his brother were located.

Ernest Fisher was at the courthouse on 4 February 1975 applying for a job with the sheriff's department. He gave defendant a ride home around 2:00 or 2:30 p.m. and let him out in front of his house. Mrs. Ida Warren, defendant's mother, got off work at 3:30 p.m. on 4 February and went directly home, arriving at 3:45 p.m. At that time defendant was in bed asleep and she did not notice anything unusual about his clothes. James Earl Sutton drank wine with defendant and others on the morning of 4 February and saw defendant ask Ernest Fisher to take him home. Sutton did not see defendant any more that day.

Other facts necessary to decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Associate Attorney Jack Cozort for the State.*

*Creighton W. Sossomon for defendant appellant.*

MOORE, Justice.

In every case where a death sentence has been pronounced, it is the practice of this Court to carefully review the entire record to determine if prejudicial error appears. If such error does appear, even though not assigned by defendant, in capital

cases we take cognizance of the error *ex mero motu*. In present case, prejudicial error is disclosed by the following testimony:

Curtis Boyd Wyatt, a witness for the State, testified:

" . . . I was arrested February 17, 1975 on the charge of breaking and entering and placed in the Haywood County Jail. I recall seeing Willard Warren on February 25th. He was up in jail with us charged with public drunk. He made a statement there. We were talking about Reeves Webb.

\*    \*    \*

We were talking about Reeves Webb being nervous.

Q. Now, what did Willard Warren say about Reeves Webb and what did he tell you?

A. We were just talking about him being so nervous and he said he met Reeves Webb and they met this old man coming down the railroad track and they went to this old building and had something to drink and said they run out of wine.

Q. Who ran out of wine?

A. Willard and Reeves and Harold and they called him Jack.

Q. All right, then what happened, what did he say?

A. Said Jack gave him a dollar there.

Q. Said what?

A. Said Jack gave him a dollar there.

Q. Gave who a dollar?

A. Reeves Webb.

Q. All right.

A. To go up to the A & P store to get another bottle of wine.

Q. Then go ahead and tell what he said.

A. He said after Reeves got gone they decided to rob the old man and he bucked up on them and Harold had a 2 x 4 and he had a knife.

State v. Warren

Q. Then what did they do, just go ahead and say what he told you.

A. He said after they got through there they cleaned their hands off and decided to meet Reeves up the street before he got back and they met him about halfway in front of Tommy Mercer's and went there and drunk that wine.

Q. Did he say anything about having any money?

A. He said it was $18.36 they took off him.

Q. Said it was how much?

A. Said $18.36 they took off him.

Q. Now, did he say where they saw Reeves Webb, I mean after they went up the street?

A. Said they met him halfway up the street and went over to Tommy Mercer's and drunk that bottle."

Wyatt also testified that defendant was sober when he made this statement and that defendant was more or less bragging when he told the story. Wyatt further testified: "I told Dan Crawford of the SBI exactly what I have said here. . . . All he [defendant] said was that he had a knife·and Harold had a 2 x 4. He did not say he stabbed him in the chest, and I never told anyone he did. He did not say he cut him in the face."

Dan Crawford, an agent of the State Bureau of Investigation who had previously testified for the State, was recalled and was asked for the purpose of corroboration what statement Curtis Boyd Wyatt had made to him. At the request of defendant's counsel, the court instructed the jury: "Members of the jury, this evidence. is offered and admitted for the sole purpose of corroborating or strengthening the testimony of the witness, Curtis Boyd Wyatt, if you find that it does or tends to do so and it may not be considered by you for any other purpose." Mr. Crawford was then instructed to go ahead and tell what Wyatt had told him. Crawford then testified:

"A. Mr. Wyatt was interviewed on Thursday, February 27, 1975 at 5 o'clock p.m., reference investigation of the homicide of Leo Jack Clark. Mr. Wyatt stated that on Tuesday evening on or about the 25th day of February, 1975, while in the Haywood County Jail, that he, Wyatt,

was talking to Willard Warren; they talked about different things and it was mentioned about Reeves Webb getting out of jail that morning; that Willard Warren laughed about Reeves and said that he knew Reeves and that they drank together; he said that he, Willard Warren, and his brother, Harold Warren, had seen Reeves Webb and this old man go into a little building with a bottle of wine and that he and his brother had gone to see if they could get a drink; that they drank all the wine and that the old man said that he had some money and would buy some more wine and gave Reeves a dollar; that they sent Reeves to the A & P store to get the wine and while he was gone he, Willard Warren, and Harold Warren decided to kill and rob the old man; that Harold Warren hit the old man with a 2 x 4 piece of wood and Willard cut the man in the face and cut the old man's chest and cut his throat; that they got $18.00 and 34 or 36 cents from the man and hurried to get out of there before Reeves returned with the wine; that Willard and Harold met Reeves coming back down from the A & P store with the wine and that they went over to Tommy Mercer's house and drank the wine.

"Further, that while attacking the old man he had skinned his elbow, the right one, against the wall.

"He also mentioned that a little man that walked fast and had a dog that followed behind him, that they were going to kill him next."

[1] The testimony of Crawford contains additional evidence going far beyond the testimony of Wyatt. For instance, Wyatt only testified that defendant and his brother Harold decided to rob the old man and that Harold had a 2 x 4 and defendant had a knife. At no time did Wyatt say that defendant told him that they planned to rob *and kill* the old man or that Harold hit the old man with a 2 x 4, or that defendant cut the old man's face, chest and throat. In fact, Wyatt emphasized that all defendant said was that he had a knife and Harold had a 2 x 4. Wyatt further emphasized that defendant did not say he stabbed the deceased in the chest or cut him in the face, and that Wyatt never told anyone that he did. Neither did Wyatt testify that defendant told him that he and his brother had planned to next kill another man. Thus, the testimony of Crawford showed that defendant and his brother, contrary to Wyatt's statement, planned not only to rob the victim but also planned in advance

to kill him. Crawford's testimony further discloses, contradicting Wyatt's testimony, who struck each blow. Additionally, Crawford's testimony indicates that defendant and his brother had planned an additional murder, a fact not mentioned in Wyatt's testimony. Crawford's testimony goes far beyond corroboration. Actually, in some instances it flatly contradicts Wyatt's testimony.

Prior consistent statements of a witness to strengthen his credibility have been approved by this Court in many cases. *See* 1 Stansbury, N. C. Evidence § 51, pp. 146-47 (Brandis Rev. 1973), and cases cited therein. *See also* § 52, id., and cases therein cited for criticism of the North Carolina rule and the reasons for it. In *Lorbacher v. Talley,* 256 N.C. 258, 123 S.E. 2d 477 (1962), Justice Bobbitt (later Chief Justice) quoted with approval:

> "As stated by *Smith, C.J.,* in *Jones v. Jones,* 80 N.C. 246, 250: 'In whatever way the credit of the witness may be impaired, it may be restored or strengthened by this [proof of prior consistent statements] or any other proper evidence tending to insure confidence in his veracity and in the truthfulness of his testimony.' *Bowman v. Blankenship,* 165 N.C. 519, 81 S.E. 2d 746; *Brown v. Loftis,* 226 N.C. 762, 764, 40 S.E. 2d 421; Stansbury, *op. cit.* § 50. . . . "

*See State v. Rose,* 270 N.C. 406, 154 S.E. 2d 492 (1967). Such previously consistent statements, however, are admissible only when they are in fact consistent with the witness's testimony. *State v. Bagley,* 229 N.C. 723, 51 S.E. 2d 298 (1949); *State v. Melvin,* 194 N.C. 394, 139 S.E. 762 (1927); 1 Stansbury, N. C. Evidence § 52, pp. 150-51 (Brandis Rev. 1973). Nevertheless, if the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible. Such variations affect only the credibility of the evidence which is always for the jury. *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972); *State v. Norris,* 264 N.C. 470, 141 S.E. 2d 869 (1965); *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429 (1960), *cert. den.,* 365 U.S. 830, 5 L.Ed. 2d 707, 81 S.Ct. 717 (1961). However, "[i]f a prior statement of the witness, offered in corroboration of his testimony at the trial, contains additional evidence going beyond his testimony, the State is not entitled to introduce the 'new' evidence under a claim of corroboration. . . . " *State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354 (1963). *See State v. Strickland,* 276 N.C. 253,

173 S.E. 2d 129 (1970). Defendant's counsel should have moved to strike that part of Crawford's testimony which did not corroborate the testimony of Wyatt. *Gibson v. Whitton,* 239 N.C. 11, 79 S.E. 2d 196 (1953). This he failed to do. In *State v. Fowler,* 270 N.C. 468, 155 S.E. 2d 83 (1967), a capital case factually similar to this, testimony offered for the purpose of corroboration failed, in part, to corroborate. Defendant's counsel did not move to strike that part which did not corroborate. In the opinion, this question was asked by Justice Higgins: "Should not the Court have so acted on its motion and instructed the jury to disregard the testimony?" Justice Higgins, in answering this question in the affirmative and awarding a new trial, quoted with approval from *State v. McKoy,* 236 N.C. 121, 71 S.E. 2d 921 (1952), a capital case:

> " 'In this enlightened age the humanity of the law is such that no man shall suffer death as a penalty for crime, except upon conviction in a trial free from substantial error and in which the constitutional and statutory safeguards for the protection of his rights have been scrupulously observed. Therefore, in all capital cases reaching this Court, it is the settled policy to examine the record for the ascertainment of reversible error. *S. v. Watson,* 208 N.C. 70, 179 S.E. 455; *S. v. Stovall,* 214 N.C. 695, 200 S.E. 426; *S. v. Moore,* 216 N.C. 543, 5 S.E. 2d 719; *S. v. Williams,* 216 N.C. 740, 6 S.E. 2d 492; *S. v. Page,* 217 N.C. 288, 7 S.E. 2d 559; *S. v. Morrow,* 220 N.C. 441, 17 S.E. 2d 507; *S. v. Brooks,* 224 N.C. 627, 31 S.E. 2d 754; *S. v. West,* 229 N.C. 416, 50 S.E. 2d 3; *S. v. Garner,* 230 N.C. 66, 51 S.E. 2d 895. If, upon such an examination, error is found, it then becomes the duty of the Court upon its own motion to recognize and act upon the error so found. *S. v. Sermons,* 212 N.C. 767, 194 S.E. 469. This rule obtains whether the prisoner be prince or pauper.' "

While the defendant did assign as error a part of the charge in which the court recapitulated part of the corroborative testimony, he did not object at the time of the recapitulation. Neither did he assign as error that part of Crawford's testimony which went beyond and contradicted the testimony of Wyatt. Nevertheless, since we are dealing with a capital case, we take cognizance of the error *ex mero motu, State v. Fowler, supra; State v. Knight,* 248 N.C. 384, 103 S.E. 2d 452 (1958), and hold that the additional and contradictory testimony of Craw-

ford, offered as corroborating the witness Wyatt, constitutes prejudicial error and entitles defendant to a new trial.

Defendant next assigns as error the denial of his motions as of nonsuit at the close of the State's evidence and at the close of all the evidence. It is elementary that a motion as of nonsuit requires the trial court to consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Caron,* 288 N.C. 467, 219 S.E. 2d 68 (1975); *State v. Bolin,* 281 N.C. 415, 189 S.E. 2d 235 (1972); *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968). Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which the jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled. *State v. Cooke,* 278 N.C. 288, 179 S.E. 2d 365 (1971); *State v. Goines, supra.*

[2] The State's evidence in this case tends to show that Leo Jack Clark died of multiple injuries, inflicted by both blunt and sharp objects. Defendant admitted to Wyatt that he and his brother had a 2 x 4 piece of lumber and a knife when they decided to rob Clark and that "he bucked up on them." Defendant further admitted that he and his brother took $18.36 from Clark, cleaned their hands when they were through, and went to meet Reeves Webb before he returned to the abandoned shed. Although defendant's admissions do not include the actual use of the weapons against Clark, the evidence is sufficient to go to the jury on the charge of murder in the first degree, a murder committed in the perpetration of a robbery. G.S. 14-17; *State v. McLaughlin,* 286 N.C. 597, 213 S.E. 2d 238 (1975); *State v. Wright,* 282 N.C. 364, 192 S.E. 2d 818 (1972); *State v. Rich,* 277 N.C. 333, 177 S.E. 2d 422 (1970).

[3] Defendant's final contention that the imposition of the death penalty results in cruel and unusual punishment and is therefore constitutionally impermissible, has been rejected by this Court in many recent decisions, including *State v. Robbins,* 287 N.C. 483, 214 S.E. 2d 756 (1975); *State v. Stegmann,* 286 N.C. 638, 213 S.E. 2d 262 (1975); *State v. Honeycutt,* 285 N.C. 174, 203 S.E. 2d 844 (1974); *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974). We adhere to those decisions.

Other assignments of error relate to matters not likely to arise at a second trial and do not warrant discussion here. For the reasons stated, the defendant is entitled to a new trial.

New trial.