223 S.E.2d 317 (1976)
289 N.C. 551
STATE of North Carolina
v.
Willard WARREN, Jr.
No. 14.
Supreme Court of North Carolina.
April 6, 1976.
*319 Atty. Gen. Rufus L. Edmisten, Raleigh, and Associate Atty. Jack Cozort for the State.
Creighton W. Sossomon, Sylva, for defendant-appellant.
MOORE, Justice.
In every case where a death sentence has been pronounced, it is the practice of this Court to carefully review the entire record to determine if prejudicial error appears. If such error does appear, even though not assigned by defendant, in capital cases we take cognizance of the error ex mero motu. In present case, prejudicial error is disclosed by the following testimony:
Curtis Boyd Wyatt, a witness for the State, testified:
". . . I was arrested February 17, 1975 on the charge of breaking and entering and placed in the Haywood County Jail. I recall seeing Willard Warren on February 25th. He was up in jail with us charged with public drunk. He made a statement there. We were talking about Reeves Webb.
* * * * * *
We were talking about Reeves Webb being nervous.
Q. Now, what did Willard Warren say about Reeves Webb and what did he tell you?
A. We were just talking about him being so nervous and he said he met Reeves Webb and they met this old man coming down the railroad track and they went to this old building and had something to drink and said they run out of wine.
Q. Who ran out of wine?
A. Willard and Reeves and Harold and they called him Jack.
Q. All right, then what happened, what did he say?
A. Said Jack gave him a dollar there.
Q. Said what?
A. Said Jack gave him a dollar there.
Q. Gave who a dollar?
A. Reeves Webb.
Q. All right.
A. To go up to the A & P store to get another bottle of wine.
Q. Then go ahead and tell what he said.
A. He said after Reeves got gone they decided to rob the old man and he bucked up on them and Harold had a 2×4 and he had a knife.
Q. Then what did they do, just go ahead and say what he told you.
A. He said after they got through there they cleaned their hands off and decided to meet Reeves up the street before he got back and they met him about halfway in front of Tommy Mercer's and went there and drunk that wine.
Q. Did he say anything about having any money?

*320 A. He said it was $18.36 they took off him.
Q. Said it was how much?
A. Said $18.36 they took off him.
Q. Now, did he say where they saw Reeves Webb, I mean after they went up the street?
A. Said they met him halfway up the street and went over to Tommy Mercer's and drunk that bottle."
Wyatt also testified that defendant was sober when he made this statement and that defendant was more or less bragging when he told the story. Wyatt further testified: "I told Dan Crawford of the S.B.I. exactly what I have said here. . . All he [defendant] said was that he had a knife and Harold had a 2×4. He did not say he stabbed him in the chest, and I never told anyone he did. He did not say he cut him in the face."
Dan Crawford, an agent of the State Bureau of Investigation who had previously testified for the State, was recalled and was asked for the purpose of corroboration what statement Curtis Boyd Wyatt had made to him. At the request of defendant's counsel, the court instructed the jury: "Members of the jury, this evidence is offered and admitted for the sole purpose of corroborating or strengthening the testimony of the witness, Curtis Boyd Wyatt, if you find that it does or tends to do so and it may not be considered by you for any other purpose." Mr. Crawford was then instructed to go ahead and tell what Wyatt had told him. Crawford then testified:
"A. Mr. Wyatt was interviewed on Thursday, February 27, 1975 at 5 o'clock p. m., reference investigation of the homicide of Leo Jack Clark. Mr. Wyatt stated that on Tuesday evening on or about the 25th day of February, 1975, while in the Haywood County Jail, that he, Wyatt, was talking to Willard Warren; they talked about different things and it was mentioned about Reeves Webb getting out of jail that morning; that Willard Warren laughed about Reeves and said that he knew Reeves and that they drank together; he said that he, Willard Warren, and his brother, Harold Warren, had seen Reeves Webb and this old man go into a little building with a bottle of wine and that he and his brother had gone to see if they could get a drink; that they drank all the wine and that the old man said that he had some money and would buy some more wine and gave Reeves a dollar; that they sent Reeves to the A & P store to get the wine and while he was gone he, Willard Warren, and Harold Warren decided to kill and rob the old man; that Harold Warren hit the old man with a 2×4 piece of wood and Willard cut the man in the face and cut the old man's chest and cut his throat; that they got $18.00 and 34 or 36 cents from the man and hurried to get out of there before Reeves returned with the wine; that Willard and Harold met Reeves coming back down from the A & P store with the wine and that they went over to Tommy Mercer's house and drank the wine.
"Further, that while attacking the old man he had skinned his elbow, the right one, against the wall.
"He also mentioned that a little man that walked fast and had a dog that followed behind him, that they were going to kill him next."
The testimony of Crawford contains additional evidence going far beyond the testimony of Wyatt. For instance, Wyatt only testified that defendant and his brother Harold decided to rob the old man and that Harold had a 2×4 and defendant had a knife. At no time did Wyatt say that defendant told him that they planned to rob and kill the old man or that Harold hit the old man with a 2×4, or that defendant cut the old man's face, chest and throat. In fact, Wyatt emphasized that all defendant said was that he had a knife and Harold had a 2×4. Wyatt further emphasized that defendant did not say he stabbed the deceased in the chest or cut him in the face, *321 and that Wyatt never told anyone that he did. Neither did Wyatt testify that defendant told him that he and his brother had planned to next kill another man. Thus, the testimony of Crawford showed that defendant and his brother, contrary to Wyatt's statement, planned not only to rob the victim but also planned in advance to kill him. Crawford's testimony further discloses, contradicting Wyatt's testimony, who struck each blow. Additionally, Crawford's testimony indicates that defendant and his brother had planned an additional murder, a fact not mentioned in Wyatt's testimony. Crawford's testimony goes far beyond corroboration. Actually, in some instances it flatly contradicts Wyatt's testimony.
Prior consistent statements of a witness to strengthen his credibility have been approved by this Court in many cases. See 1 Stansbury, N.C.Evidence § 51, pp. 146-47 (Brandis Rev. 1973), and cases cited therein. See also § 52, id., and cases therein cited for criticism of the North Carolina rule and the reasons for it. In Lorbacher v. Talley, 256 N.C. 258, 123 S.E.2d 477 (1962), Justice Bobbitt (later Chief Justice) quoted with approval:
"As stated by Smith, C. J., in Jones v. Jones, 80 N.C. 246, 250: `In whatever way the credit of the witness may be impaired, it may be restored or strengthened by this [proof of prior consistent statements] or any other proper evidence tending to insure confidence in his veracity and in the truthfulness of his testimony.' Bowman v. Blankenship, 165 N.C. 519, 81 S.E. 746; Brown v. Loftis, 226 N.C. 762, 764, 40 S.E.2d 421; Stansbury, op. cit. § 50. . . ."
See State v. Rose, 270 N.C. 406, 154 S.E.2d 492 (1967). Such previously consistent statements, however, are admissible only when they are in fact consistent with the witness's testimony. State v. Bagley, 229 N.C. 723, 51 S.E.2d 298 (1949); State v. Melvin, 194 N.C. 394, 139 S.E. 762 (1927); 1 Stansbury, N.C.Evidence § 52, pp. 150-51 (Brandis Rev. 1973). Nevertheless, if the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible. Such variations affect only the credibility of the evidence which is always for the jury. State v. Bryant, 282 N.C. 92, 191 S.E.2d 745 (1972); State v. Norris, 264 N.C. 470, 141 S.E.2d 869 (1965); State v. Case, 253 N.C. 130, 116 S.E.2d 429 (1960), cert. den., 365 U.S. 830, 81 S.Ct. 717, 5 L.Ed.2d 707 (1961). However, "[i]f a prior statement of the witness, offered in corroboration of his testimony at the trial, contains additional evidence going beyond his testimony, the State is not entitled to introduce the `new' evidence under a claim of corroboration.. . . " State v. Brooks, 260 N.C. 186, 132 S.E.2d 354 (1963). See State v. Strickland, 276 N.C. 253, 173 S.E.2d 129 (1970). Defendant's counsel should have moved to strike that part of Crawford's testimony which did not corroborate the testimony of Wyatt. Gibson v. Whitton, 239 N.C. 11, 79 S.E.2d 196 (1953). This he failed to do. In State v. Fowler, 270 N.C. 468, 155 S.E.2d 83 (1967), a capital case factually similar to this, testimony offered for the purpose of corroboration failed, in part, to corroborate. Defendant's counsel did not move to strike that part which did not corroborate. In the opinion, this question was asked by Justice Higgins: "Should not the Court have so acted on its motion and instructed the jury to disregard the testimony?" Justice Higgins, in answering this question in the affirmative and awarding a new trial, quoted with approval from State v. McKoy, 236 N.C. 121, 71 S.E.2d 921 (1952), a capital case:
"`In this enlightened age the humanity of the law is such that no man shall suffer death as a penalty for crime, except upon conviction in a trial free from substantial error and in which the constitutional and statutory safeguards for the protection of his rights have been scrupulously observed. Therefore, in all capital cases reaching this Court, it is the settled policy to examine the record for the ascertainment *322 of reversible error. State v. Watson, 208 N.C. 70, 179 S.E. 455; State v. Stovall, 214 N.C. 695, 200 S.E. 426; State v. Moore, 216 N.C. 543, 5 S.E.2d 719; State v. Williams, 216 N.C. 740, 6 S.E.2d 492; State v. Page, 217 N.C. 288, 7 S.E.2d 559; State v. Morrow, 220 N.C. 441, 17 S.E.2d 507; State v. Brooks, 224 N.C. 627, 31 S.E.2d 754; State v. West, 229 N.C. 416, 50 S.E.2d 3; State v. Garner, 230 N.C. 66, 51 S.E.2d 895. If, upon such an examination, error is found, it then becomes the duty of the Court upon its own motion to recognize and act upon the error so found. State v. Sermons, 212 N.C. 767, 194 S.E. 469. This rule obtains whether the prisoner be prince or pauper.'"
While the defendant did assign as error a part of the charge in which the court recapitulated part of the corroborative testimony, he did not object at the time of the recapitulation. Neither did he assign as error that part of Crawford's testimony which went beyond and contradicted the testimony of Wyatt. Nevertheless, since we are dealing with a capital case, we take cognizance of the error ex mero motu, State v. Fowler, supra; State v. Knight, 248 N.C. 384, 103 S.E.2d 452 (1958), and hold that the additional and contradictory testimony of Crawford, offered as corroborating the witness Wyatt, constitutes prejudicial error and entitles defendant to a new trial.
Defendant next assigns as error the denial of his motions as of nonsuit at the close of the State's evidence and at the close of all the evidence. It is elementary that a motion as of nonsuit requires the trial court to consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. State v. Caron, 288 N.C. 467, 219 S.E.2d 68 (1975); State v. Bolin, 281 N.C. 415, 189 S.E.2d 235 (1972); State v. Goines, 273 N.C. 509, 160 S.E.2d 469 (1968). Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which the jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled. State v. Cooke, 278 N.C. 288, 179 S.E.2d 365 (1971); State v. Goines, supra.
The State's evidence in this case tends to show that Leo Jack Clark died of multiple injuries, inflicted by both blunt and sharp objects. Defendant admitted to Wyatt that he and his brother had a 2×4 piece of lumber and a knife when they decided to rob Clark and that "he bucked up on them." Defendant further admitted that he and his brother took $18.36 from Clark, cleaned their hands when they were through, and went to meet Reeves Webb before he returned to the abandoned shed. Although defendant's admissions do not include the actual use of the weapons against Clark, the evidence is sufficient to go to the jury on the charge of murder in the first degree, a murder committed in the perpetration of a robbery. G.S. 14-17; State v. McLaughlin, 286 N.C. 597, 213 S.E.2d 238 (1975); State v. Wright, 282 N.C. 364, 192 S.E.2d 818 (1972); State v. Rich, 277 N.C. 333, 177 S.E.2d 422 (1970).
Defendant's final contention that the imposition of the death penalty results in cruel and unusual punishment and is therefore constitutionally impermissible, has been rejected by this Court in many recent decisions, including State v. Robbins, 287 N.C. 483, 214 S.E.2d 756 (1975); State v. Stegmann, 286 N.C. 638, 213 S.E.2d 262 (1975); State v. Honeycutt, 285 N.C. 174, 203 S.E.2d 844 (1974); State v. Henderson, 285 N.C. 1, 203 S.E.2d 10 (1974); State v. Jarrette, 284 N.C. 625, 202 S.E.2d 721 (1974). We adhere to those decisions.
Other assignments of error relate to matters not likely to arise at a second trial and do not warrant discussion here. For the reasons stated, the defendant is entitled to a new trial.
New Trial.