STATE OF NORTH CAROLINA v. ARTHUR DAVID CHANDLER

No. 7527SC624

(Filed 4 February 1976)

1. **Criminal Law § 73— officer's reason for going to crime scene — testimony not hearsay**
    An officer's testimony that he went to a store because he received a radio call that there had been a robbery-shooting at the store was not objectionable as hearsay since the statement was not made to prove the truth of the matter asserted, that is, that there had been a robbery-shooting, but rather to explain the officer's presence and time of arrival at the crime scene.

2. **Robbery § 4— armed robbery — sufficiency of evidence**
    The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of armed robbery of a store proprietor where it tended to show that defendant was present when his companion borrowed a pistol identified as the one with which the store proprietor was shot, and defendant admitted in a statement to an officer that he removed checks from the store immediately after shooting the proprietor.

3. **Criminal Law § 113; Conspiracy § 7— instructions on conspiracy — no evidence of conspiracy — absence of prejudice**
    In this prosecution for first degree murder and armed robbery, defendant was not prejudiced when the court instructed the jury on conspiracy after telling the jury that, although defendant was not charged with conspiracy, it was necessary for the court to define the term "conspiracy" in order for the jury to understand the instructions.

APPEAL by defendant from *Ervin, Judge*. Judgment entered 13 March 1975 in Superior Court, GASTON County. Heard in the Court of Appeals 12 November 1975.

Defendant was charged in a bill of indictment with first degree murder and with armed robbery.

The evidence tends to show that Milous Holland saw Ted Carter with David Chandler on 30 July 1974. At that time, Holland loaned Carter his loaded .32 caliber pistol. Holland next saw his pistol at the police station.

Harold Thomas Davis saw the defendant on 2 August 1974 at the Smyre Gang Clubhouse near Spencer Mountain. Upon the request of the defendant, Davis loaned his 1973 red Vega to Chandler. Carter left in the vehicle with Chandler around 8:30 a.m. and returned around 12:00 noon. The two borrowed the car a second time that afternoon for about twenty minutes.

J. H. Jordan was in his place of business, Roberson's Place, on 2 August 1974 when two persons parked in the front of the store in a red Vega and sat there talking. Jordan identified the two as Chandler and Carter. Chandler tried to sell Jordan an old model rifle, but Jordan was not interested. The two left the store around 12:00 noon.

Homer Wright identified the defendant and Carter as the men he saw knocking on the door of Ben Stroup's store on 2 August 1974 between 11:45 and 12:00 noon. A red Vega was parked out front at that time.

On 2 August 1974 at around 12:30 p.m., Patricia Bingham saw two men hurriedly leaving the side door of Ben Stroup's store. She identified the defendant as the one of these two men who got into the passenger side of the automobile.

Around 2:30 or 3:00 o'clock on 2 August 1974, Roy Franklin McGinnis saw Carter and the defendant at the Smyre Gang Clubhouse. The defendant promised McGinnis a six-pack of beer if he would drive him to the bank. Defendant had several checks which he finally was able to cash after being driven around to several banks by McGinnis. While driving around, defendant showed McGinnis a roll of money.

When Joel Brent Plainer entered Stroup's store on 2 August 1974 at about 3:45, he found Stroup lying in a puddle of his own blood.

Stroup was dead when he was examined by the coroner at about 4:25 that same day.

In the opinion of Dr. E. M. Kelman, Stroup died from a .32 caliber bullet wound.

After the voir dire hearing during which police officers J. G. Berrier, Larry Hardin, and Doyle Trull testified, the court made findings of fact from which he concluded as a matter of law the following:

"1. That the defendant was adequately and properly advised of his constitutional rights in accordance with the decision of the United States Supreme Court in the case of MIRANDA v. ARIZONA;.

2. That the defendant understood his constitutional rights and knowingly and understandingly waived his rights at the time of each interrogation; that the defendant also affirmatively waived his right to a lawyer at the time of each and every interrogation;

3. That the defendant's statement is not a result of any improper or unlawful promises or improper threats or coercion on the part of any of the questioning officers.

4. That the State, if it so desires, will be permitted to offer in evidence in the trial of this case the statement made by the defendant to Agent Berrier on Saturday night, August 3, 1974, and reduced to writing on the early morning of Sunday, August 3 [sic], 1974."

In the statement made by defendant to Officer Berrier after waiving his rights, the defendant admitted that he and Carter entered Stroup's store to buy some magazines between 11:30 and 12:00 noon on 2 August 1974 after taking the drug, MDA, for several days and after having consumed about six or seven beers each. Carter asked Stroup for a pack of cigarettes. Stroup and Carter began arguing about whether Carter had paid for the cigarettes. Stroup pulled out his revolver from his right hip pocket and pointed it at Carter. As Stroup cocked the gun, the defendant grabbed Stroup's hand and pointed the gun toward Stroup. The gun went off and the shot struck Stroup in the upper right portion of his chest. Stroup moved to the back of the store and raised the gun at both the defendant and Carter. The defendant kicked the gun from Stroup's hand and shot Stroup in the shoulder. The defendant threw the gun on Stroup's body, and grabbed up some payroll checks. The two left Stroup's store, but returned a short while later to look for

some money. The defendant found $50 to $60, and the two returned to the Smyre Gang Clubhouse after purchasing a case of beer. The defendant then had a man named Roy drive him around to several banks in order to cash the checks which were stolen from Stroup's store.

The police officers did not find Stroup's gun in his store. Stroup's gun was turned over to the police by Paul Bledsoe. Bledsoe took Stroup's gun, intending to steal it, from a place where Carter had hidden it. Bledsoe never saw the gun in the defendant's possession. Stroup's gun was labeled State's Exhibit No. 11. The court found Frederick Mark Hurst, Jr., to be an expert in the field of firearms and tool mark identification. Hurst testified that in his opinion, neither State's Exhibit No. 9 nor No. 10, (the bullets from Stroup's body), was fired in State's Exhibit No. 11. He was unable to determine conclusively whether State's Exhibit No. 10 was fired from State's Exhibit No. 1, (the gun borrowed from Milious Holland). However, Hurst did testify that in his opinion, State's Exhibit No. 9 was fired from State's Exhibit No. 1.

Defendant testified in his own behalf. He testified that he was in Stroup's store with Carter on 2 August 1974, but that he was in the car when the shooting occurred. He testified that Carter came out of the store and got into the car after the shooting saying that Stroup had tried to kill him and therefore he (Carter) had to shoot Stroup. Carter then laid State's Exhibit No. 1 on the seat of the car. According to defendant, this was the first time he saw the gun. Further, he said that the money and the checks were taken by Carter alone. He said that he went back to the store a short while later to see if Stroup was dead. After checking his pulse, he took Stroup's gun from his right hand, and then left the store a second time. Because he was afraid of Carter, he attempted to cash the checks Carter stole from Stroup. The defendant identified State's Exhibit No. 11 as the gun he removed from Stroup's hand. He said that at the time he made his statement to the officers, that he " . . . was messed up on M.D.A."

The jury found the defendant not guilty of murder in the first degree. From a verdict of guilty of the charge of armed robbery, defendant appealed.

State v. Chandler

*Attorney General Edmisten, by Associate Attorney Archie W. Anders and Associate Attorney Wilton E. Ragland, Jr., for the State.*

*Harris and Bumgardner, by Tim L. Harris and Don H. Bumgardner, for defendant appellant.*

MARTIN, Judge.

[1] Defendant contends that the court committed error by denying defendant's motion to strike the statement made by Officer Trull concerning a radio call he received. The officer testified that he went to Mr. Stroup's store on 2 August 1974 as a result of a call he received. He said, "I received a call on the radio at 3:20 that there had been a robbery-shooting at Ben Stroup's. . . . " Defendant contends that this statement constituted hearsay and prejudicial error. We disagree. The statement was not made to prove the truth of the matter asserted, that is, that there had been a robbery shooting, but rather to explain his presence and time of arrival on the scene. Thus, the statement is not objectionable as hearsay. *State v. Crump,* 277 N.C. 573, 178 S.E. 2d 366 (1971). This assignment of error is overruled.

[2] Defendant further contends that the court erred in refusing to grant nonsuit at the close of all the evidence as to the armed robbery charge. Upon a motion being made for nonsuit by defendant, the trial judge must consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608 (1971). "Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it, the motion to nonsuit should be overruled." *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968). In the present case, there was evidence from which the jury could find that the offense charged had been committed in that the defendant admitted, in his statement to Officer Berrier, removing some checks from the premises immediately after shooting Stroup. Further, the State's evidence shows that defendant and Carter were at Holland's house a few days before the shooting when Carter borrowed a .32 caliber pistol from Holland which was identified as the one with which Stroup was shot. The court is not concerned in a motion to nonsuit with

the weight of the testimony, but only with its sufficiency to carry the case to the jury and to sustain the indictment. *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969). When tested by these principles there is abundant evidence to carry the case to the jury. The motion for compulsory nonsuit was properly denied.

[3] Defendant also contends that the court erred in its charge to the jury as to conspiracy when defendant was not charged with conspiracy and when there was no evidence presented as to a conspiracy. The trial judge instructed the jury as follows:

> "Now, the defendant in this case is not charged with the offense of conspiracy, but I think in order for you to understand these instructions, it is necessary for me to tell you what is meant by the term 'conspiracy'."

While we deem any instruction on conspiracy in this case to be unnecessary, we find that no prejudicial error was committed by the trial judge since he very clearly instructed the jury that the defendant was charged with two separate criminal offenses, first degree murder and armed robbery. This assignment of error is overruled.

We have considered defendant's remaining assignments of error and find them to be without merit.

Defendant had a fair trial free from prejudicial error.

No error.

Judges MORRIS and PARKER concur.