STATE OF NORTH CAROLINA v. WARNER FOWLER, ALIAS JOHNNY RINGO GRAHAM.

(Filed 20 June, 1967.)

1. **Criminal Law § 139—**

The Supreme Court will review the record on appeal from a death sentence with minute care to the end that it may affirmatively appear that all proper safeguards have been vouchsafed the defendant.

2. **Criminal Law § 84;  Homicide § 17—**

A State's witness testified to the effect that, as a police officer was attempting to lock defendant in a cell, defendant threw the officer down, took his gun, forced the officer into a cell and shot the officer without saying anything. Another witness, for the purpose of corroboration, was permitted to testify to prior consistent statements of the first witness, but testified further that the first witness stated that defendant, before firing the shot, said that he "was sorry but he had to do this." *Held:* The further testimony did not corroborate the first witness and was therefore incompetent for this purpose, and was highly prejudicial as tending to establish premeditation and deliberation.

3. **Criminal Law § 139—**

In this homicide prosecution, a witness, in testifying to prior consistent statements of the witness for the purpose of corroboration, added incriminating statements which were not in corroboration of the witness but were in contradiction. The trial judge repeated the incompetent testimony in his charge. *Held:* Defendant having been convicted of a capital offense, the Supreme Court will take cognizance of the error *ex mero motu*, notwithstanding the absence of motion by defendant's counsel to strike the incompetent testimony.

APPEAL by defendant from *Copeland, S.J.,* January, 1966 Criminal Session, WAYNE Superior Court.

The Wayne County Grand Jury returned a true bill of indictment charging Warner Fowler (alias Johnny Ringo Graham) with the first degree murder of W. B. Braswell. The offense occurred on November 13, 1965.

At the January, 1966 Session of Wayne Superior Court, the defendant was tried upon the indictment. The jury returned a verdict of guilty of murder in the first degree with the recommendation that punishment shall be imprisonment for life in the State's prison. On appeal, this Court awarded a new trial.

The new trial resulted in a verdict of guilty of murder in the first degree. The jury failed to make any recommendation. The Court imposed a sentence of death. The defendant, by this appeal, seeks a new trial. The grounds for the appeal will be discussed in the opinion.

*T. W. Bruton, Attorney General; Millard R. Rich, Jr., Assistant Attorney General for the State.*
    *John H. Kerr, III, for defendant appellant.*

HIGGINS, J.  Each case which comes here is important to the parties involved and receives a careful review of the legal questions presented for decision. However, it is the uniform practice of this Court in every case in which a death sentence has been pronounced to examine and review the record with minute care to the end it may affirmatively appear that all proper safeguards have been vouchsafed the unfortunate accused before his life is taken by the State.

In this case the evidence disclosed that on the morning of November 13, 1965 the defendant and his girlfriend, Ruby Rivers (both under the influence of liquor) were engaged in a fight on the streets of Fremont. As police officer W. B. Braswell appeared, Ruby ran and hid in an automobile in the rear of a grocery store. Officer Braswell arrested both participants and took them to the city jail. No one seems to have been in the jail at the time the officer entered with his prisoners. He locked Ruby in cell No. 1, opened the door to cell No. 2 and ordered the defendant to enter. The defendant refused. Ruby Rivers, a witness for the State, testified:

> ". . . (I) saw the defendant throw Mr. Braswell down. Mr. Braswell fell in the hallway. Johnny was trying to take the gun out of the holster and Mr. Braswell was trying to hold the gun in the holster. The defendant got the gun and the key ring. The defendant told Mr. Braswell to get to his feet and go into the cell. Mr. Braswell went into the cell. After that I couldn't see Mr. Braswell because I couldn't see around the cell because I was locked up. I could see the defendant because he was still standing in front of the cell. I couldn't see Mr. Braswell. I saw the defendant when he shot Mr. Braswell. He fired the gun once. I saw the defendant holding the gun before he fired it. He was pointing the gun towards the cell, the number two cell. . . .

> \*　　\*　　\*

> Right after the defendant took the gun away from Mr. Braswell and before the shooting, Mr. Braswell said, 'You've got the gun, now take it and go.' The defendant didn't say anything then. . . ."

After Ruby Rivers had completed her testimony the State called James Sasser, a police officer, for the purpose of corroborating the story told by Ruby Rivers. The defendant objected. The Court over-

ruled the objection. Witness Sasser, for the purpose of corroboration, testified:

". . . (S)he said that at that point Mr. Braswell pleaded with him and said, 'You have my gun, please go on, just leave,' the words she used. SHE SAID THAT JOHNNY RINGO HAD MOVED AWAY FROM MR. BRASWELL SOME DISTANCE WITH THE GUN POINTING TOWARDS HIM AND AT THAT POINT HE TOLD HIM HE WAS SORRY BUT HE HAD TO DO THIS, . . .

\* \* \*

COURT: Hold that for a minute, right there. Go ahead."

Officer Sasser testified, quoting Ruby Rivers, that before firing the fatal shot the defendant "told him he was sorry but he had to do this."

The Court charged ". . . that Ruby Rivers told Deputy Sheriff Sasser . . . that Johnny Ringo snatched it (pistol) out of the holster . . . backed up three or four feet . . . had the gun in his hand . . . and said 'I am sorry, I got to do this,' . . . shoved him into the cell . . . held the gun out in front and fired it at that time." The foregoing is the subject of the defendant's Exception No. 78, Assignment of Error Group 5.

A comparison of the testimony of Deputy Sheriff Sasser, quoting Ruby Rivers, and the summary of that evidence in the Court's charge, makes it rather obvious the Court's interruption of Sasser's testimony was to enable it to make a note of what the officer said. If the Court stopped the proceedings for the purpose of making a memorandum of the testimony for use in the charge, the interruption served to emphasize the importance of the testimony. *State v. Moore,* 262 N.C. 431, 137 S.E. 2d 812. The statement "I am sorry, I got to do this" signifies deliberation and a pre-fixed purpose to kill. The trouble is the quotation did not corroborate Ruby Rivers. In fact, it flatly contradicted her evidence. She testified, "Right after the defendant took the gun away from Mr. Braswell and before the shooting, Mr. Braswell said 'You've got the gun. Now take it and go.' The defendant did not say anything." A careful check of the record before us fails to disclose that Ruby Rivers, at any time, testified the defendant said "I am sorry, I got to do this," or anything of like import.

Both Ruby Rivers and officer Sasser testified for the State in the former trial. We have examined the record filed here on the former appeal. Neither Ruby Rivers nor officer Sasser testified the defendant made the statement quoted in the preceding paragraph or anything similar thereto. The statement came into the case for the first

time through the testimony of officer Sasser, which purported to be for corroboration only. We do not suggest for one moment that Ruby Rivers did not make the statement officer Sasser attributed to her, but we do say the statement was not in corroboration of anything Ruby Rivers had testified to and hence was not properly admissible in evidence. A review of the record of the former appeal and the record before us now discloses the only essential difference in the State's evidence in the trials is the addition of the "corroborative evidence" of officer Sasser in the latter. This "corroborative evidence" may account for the difference in the judgments — life imprisonment in the first trial — death in the second.

We are confronted with the question whether the Court, on its own motion, should have withdrawn from the jury the damaging statement Sasser attributed to Ruby Rivers. When Sasser was called by the Solicitor for the purpose of corroborating her testimony, the defendant objected. At the time the Court properly overruled the objection, assuming, of course, that what the officer said would tend to corroborate her testimony. When, however, it became apparent the statement was in contradiction, and not in corroboration, defendant's counsel should have moved to strike. This he did not do. Should not the Court have so acted on its motion and instructed the jury to disregard the testimony?

In passing on the question, we must remember the Court had quoted to the jury the corroborating evidence and had instructed the jurors to consider it if they found it to be corroborative. This Court, in *State v. McCoy,* 236 N.C. 121, 71 S.E. 2d 921 (a capital case) said:

"In this enlightened age the humanity of the law is such that no man shall suffer death as a penalty for crime, except upon conviction in a trial free from substantial error and in which the constitutional and statutory safeguards for the protection of his rights have been scrupulously observed. Therefore, in all capital cases reaching this Court, it is the settled policy to examine the record for the ascertainment of reversible error. *S. v. Watson,* 208 N.C. 70, 179 S.E. 455; *S. v. Stovall,* 214 N.C. 695, 200 S.E. 426; *S. v. Moore,* 216 N.C. 543, 5 S.E. 2d 719; *S. v. Williams,* 216 N.C. 740, 6 S.E. 2d 492; *S. v. Page,* 217 N.C. 288, 7 S.E. 2d 559; *S. v. Morrow,* 220 N.C. 441, 17 S.E. 2d 507; *S. v. Brooks,* 224 N.C. 627, 31 S.E. 2d 754; *S. v. West,* 229 N.C. 416, 50 S.E. 2d 3; *S. v. Garner,* 230 N.C. 66, 51 S.E. 2d 895. If, upon such an examination, error is found, it then becomes the duty of the Court upon its own motion to recognize and act

upon the error so found. *S. v. Sermons,* 212 N.C. 767, 194 S.E. 469. This rule obtains whether the prisoner be prince or pauper."

\* \* \*

". . . (W)hile an inaccurate statement of facts contained in the evidence should be called to the attention of the court during or at the conclusion of the charge in order that the error might be corrected, a statement of a material fact not shown in the evidence constitutes reversible error. *S. v. Love,* 187 N.C. 32, 121 S.E. 20."

And, in *State v. Knight,* 248 N.C. 384, 103 S.E. 2d 452, this Court said:

". . . (W)hile the error is not assigned by the defendant, nevertheless, since we are here dealing with a capital case, we take cognizance of the error *ex mero motu.*"

The jury got this picture from the evidence of Ruby Rivers, the only eye witness. As the officer, with his prisoners, entered the jail, he locked Ruby in cell No. 1 and ordered the defendant to enter cell No. 2. The defendant refused. A scuffle ensued over the officer's revolver, which the defendant forcibly took from him. The defendant forced the officer into the cell, the officer saying, "You've got the gun, now take it and go", the defendant fired the fatal shot without saying anything. Officer Sasser had Ruby quoting the defendant as saying, immediately before the fatal shot, "I am sorry, I got to do this." The latter describes a fixed and premeditated purpose to kill. Not only did the Court charge the jury to consider Sasser's statement if the jury found it corroborated the witness, but stopped the officer in the recital and then directed him to continue his evidence. If Sasser's evidence needed emphasis, the Court's action served heavily to underscore it. A couple of exceptions inserted in the record at the right place and assignments of error based thereon would have made the task of ordering a new trial very simple, but in the light of the practice in the cases cited and in *State v. Herring,* 226 N.C. 213, 37 S.E. 2d 319, we seem to be required to overlook the formality in a capital case and pick up any errors that appear in the record, whether excepted to and assigned or not. In view of these decisions, we, not without reluctance, hold that the defendant should have a new trial where the rules of evidence are scrupulously observed. The present counsel of record did not participate in the trial. He was appointed to prepare and argue the appeal. The brief and the argument have been helpful to the Court.

New trial.