STATE v. ALBERT LELAND CRAWFORD

No. 688SC247

(Filed 31 December 1968)

**1. Criminal Law § 89; Witnesses § 5— testimony competent for corroboration**

In a prosecution for breaking and entering, where a police officer testified in detail as to what occurred at the crime scene from the time the officer arrived until defendant was arrested, the court properly admitted the testimony of a deputy sheriff as to what the officer told him had occurred at the crime scene for the purpose of corroborating the officer's testimony, the testimony not being prejudicial in allowing the deputy sheriff to repeat and emphasize the officer's testimony since the court repeatedly cautioned the jury that they should consider the deputy's testimony only insofar as it corroborated that of the officer.

**2. Criminal Law § 89; Witnesses § 5— slight variances in corroborative testimony**

Slight variances in corroborating testimony do not render such testimony inadmissible.

**3. Burglary and Unlawful Breakings § 2— intent to steal — ownership of the property**

In a prosecution for feloniously breaking and entering with intent to steal, the State must establish that at the time defendant broke and entered he intended to steal something, but the State need not establish the ownership of the property which he intended to steal.

**4. Burglary and Unlawful Breakings § 5; Indictment and Warrant § 17— intent to steal — ownership of the property**

In a prosecution for breaking and entering a building with intent to steal, the fact that the indictment alleges an intent to steal the property of a named corporation while the evidence discloses the property actually stolen belonged to another is not fatal.

**5. Larceny § 7; Indictment and Warrant § 17— variance — ownership of the property**

In a prosecution upon an indictment charging larceny of money of a named corporation, defendant's motion for nonsuit is improperly denied where the evidence discloses the money was stolen from a vending machine owned by another company and that the money in the machine was under the control and ownership of the vending machine company, there being a fatal variance between allegation and proof.

**6. Burglary and Unlawful Breakings § 6; Criminal Law § 111— instructions — jury finding that defendant was one of two persons involved in crime**

In a prosecution for breaking and entering and larceny, the court's instruction that defendant could be convicted if he was found by the jury to be one of the two men involved in the crime *is held* justified by the testimony of a police officer that when he arrived at the crime scene he saw two men run from the back door of the building.

APPEAL by defendant from *Burgwyn, E.J.*, February 1968 Special Session, WAYNE County Superior Court.

The defendant was tried pursuant to two valid bills of indictment. The first bill of indictment charged him with the felonious breaking and entering on 31 July 1967 of a building, which was occupied by Barry of Goldsboro, Inc., (Barry) with intent to steal; with larceny of $76.10 cash belonging to Barry; and with receiving $76.10 cash belonging to Barry when he knew same had been stolen. The second bill of indictment charged him with assault upon R. K. Whaley on 31 July 1967 with a 25-caliber pistol.

At the commencement of the trial, the State elected to dismiss the charge of receiving. The remaining cases were consolidated for trial.

The evidence on behalf of the State tended to show that on Sunday, 30 July 1967, Barry carried on a business operation in a building located at 1700 South John Street, Goldsboro, North Carolina;

a lunchroom, which contained eight different vending machines, was located in the building; the building had an alarm system which gave a signal in the Wayne County Sheriff's Office when any outside door was opened; about 2:00 p.m., Sunday, 30 July 1967, the building was vacated, and after all outside doors and windows had been secured, the alarm system was set; about 3:30 a.m., Monday, 31 July 1967, Police Officers R. K. Whaley and Voyd A. Davis, Jr., received a call to proceed to the Barry building; they responded to this call; and upon their arrival, Whaley got out of the police car at the southeast corner of the building, while Davis proceeded to the northeast corner.

Whaley testified as follows:

". . . I went to a small metal door on the south corner about a third of the way down the side of the building. I was examining this door that had been pried by some object when I heard voices inside the building sounded like they were at the back. I ran to the back corner of the building and I saw two subjects run from the back door of the building. The door is on the west, and about four or five feet from the corner."

He later stated that by "two subjects" he meant "two male persons." He further testified that he saw a big slide door open almost to the top; he ordered the two male persons to stop; they did not stop; the defendant fired at him; he pursued them; while following the defendant and before overtaking him, the defendant threw away a box; he caught the defendant in a ditch; he had the defendant in sight at all times; and the defendant threw a 25-caliber automatic pistol on the railroad track while he was putting a handcuff on him. Both the box, which contained money, and the pistol, which the defendant had fired at Whaley, were recovered and introduced in evidence.

The glass in a loading dock door, located on the south side of the building, was broken out about twelve or eighteen inches above a handle located on the inside. The door was opened from the inside by means of this handle, and a padlock, located just inside, was also broken. Another door, located on the side of the building, had a mark on the outside near the lock, and this mark made such an indentation that it had to be repaired before the door could be used.

The vending machines in the lunchroom were owned by Ward Vending Machine Company (Ward), and the only access to them was by means of keys, which were in the exclusive control of Ward's employees. Ward paid a percentage of the profit from the operation of these machines to Barry direct. Two machines, a change machine from which $81.60 was missing and a cigarette machine from which a coin box containing $8.40 was extracted, had been broken into.

The State offered in evidence the testimony of James Sasser, Chief Deputy Sheriff of Wayne County. He testified that he went to the premises of Barry about 3:40 a.m., Monday, 31 July 1967, in response to a telephone message, and upon his arrival he saw Whaley, Davis, Captain Jones, and the defendant. Over the defendant's objection, Sasser then testified as to what Whaley told him had occurred.

The defendant offered no evidence.

The jury returned a verdict of not guilty on the assault charge, but a verdict of guilty was returned on the breaking and entering and larceny charges. The trial court entered a judgment confining the defendant in the State prison for a period of not less than seven nor more than ten years on the breaking and entering charge and for a period of twelve months on the larceny charge. The second sentence was to run concurrently with the first sentence. From this judgment, the defendant appealed.

*T. W. Bruton, Attorney General, and Andrew A. Vanore, Jr., Staff Attorney, for the State.*

*Herbert B. Hulse, Attorney for defendant appellant.*

CAMPBELL, J.

The defendant presents three questions for decision. (1) Was it improper to permit the testimony of the witness Sasser? (2) Should the motion for judgment as of nonsuit have been allowed? (3) Did the trial court commit error in the charge to the jury?

[1]    The defendant's first contention is that the testimony of Sasser was unfair and prejudicial since this witness was permitted to repeat, emphasize and reiterate the testimony of Whaley. The defendant, relying on *State v. Fowler*, 270 N.C. 468, 155 S.E. 2d 83, argues that this was "over corroboration." However, *Fowler* is readily distinguishable from the instant case. The testimony objected to in *Fowler* was offered for purposes of corroboration, but in fact it was flatly contradictory. The trial court there emphasized this purported "corroborative" testimony by interrupting the witness in order for the judge to make a written note and by calling attention to it in the charge. In the instant case, the testimony objected to was clearly corroborative, and it closely followed the testimony of Whaley, except in two minor details. It was in no way contradictory.

Whaley testified: ". . . I saw two subjects run from the back door of the building." Sasser testified that Whaley told him: ". . .

(A)s he got to the corner of the building two people ran out of the back of the building. . . ." Whaley also testified: "I was about fifteen or twenty yards from the defendant Albert Leland Crawford when he shot at me." Sasser testified that Whaley told him: ". . . (T)hat some time during this chase across the field that he fired a weapon several times at him. . . ."

During the testimony of Sasser, the trial court instructed the jury as follows:

> "Anything he says he told him is to be received as corroborative testimony, ladies and gentlemen of the jury, corroborating Sgt. Whaley, if you find in fact it does do so; otherwise you will not consider it at all."

In addition to this admonition to the jury, the trial court cautioned the jury on five different occasions that they would consider Sasser's testimony only insofar as it tended to corroborate Whaley and that they should disregard it and dismiss it from their mind and memory if it did not corroborate Whaley. With regard to the firing of the pistol, the trial court told the jury: "The Court does not recall that Sgt. Whaley said the alleged defendant fired several times. The Court recalls that he said he fired once. Do not consider the words 'several times'."

[1, 2]    The action of the trial court in so instructing the jury as to the manner and method of considering the testimony of Sasser prevented any prejudicial effect of such testimony. We hold that in this case the testimony of Sasser was proper and in keeping with the liberal North Carolina rule which permits the introduction of corroborative evidence in support of the credibility of another witness. Stansbury, N. C. Evidence 2d, §§ 50, 51 and 52. "Slight variances in corroborating testimony do not render such testimony inadmissible." *State v. Case*, 253 N.C. 130, 116 S.E. 2d 429.

[3, 4]    The defendant's second contention is that the motion for judgment as of nonsuit should have been allowed. The first bill of indictment charged the crime of feloniously breaking and entering the Barry building with intent to steal, an offense set out in G.S. 14-54. In the instant case, it was incumbent upon the State to establish that, at the time the defendant broke and entered, he intended to steal something. However, it was not incumbent upon the State to establish the ownership of the property which he intended to steal, the particular ownership being immaterial. Therefore, the fact that the bill of indictment alleged "intent to steal, take, and carry away the merchandise, chattels, money, valuable securities of the said

Barry of Goldsboro, Inc.," when the stolen property actually belonged to Ward, was not fatal.

> "Under G.S. 14-54, if a person breaks or enters one of the buildings described therein with intent to commit the crime of larceny, he does so with intent to commit a felony, without reference to whether he is completely frustrated before he accomplishes his felonious intent or whether, if successful, the goods he succeeds in stealing have a value in excess of $200.00. In short, his criminal conduct is not determinable on the basis of the success of his felonious venture." *State v. Smith*, 266 N.C. 747, 147 S.E. 2d 165.

In *State v. Friddle*, 223 N.C. 258, 25 S.E. 2d 751, we find:

> "Felonious intent is an essential element of the crime defined in C.S., 4235 [now G.S. 14-54]. It must be alleged and proved, and the felonious intent proven, must be the felonious intent alleged, which, in this case, is the 'intent to steal.' "

There was ample evidence to justify the submission of the case to the jury on the charge of feloniously breaking and entering the Barry building with the intent to steal therefrom and to justify the jury in finding the defendant guilty of that crime.

[5]  The second count of the first bill of indictment charged the defendant with larceny of $76.10 "of the goods, chattels, and moneys of the said Barry of Goldsboro, Inc." However, the State's evidence revealed that "(t)he money was strictly and absolutely under the control and ownership of Ward Vending Machine Company and no one at Barry's [handled] the money or [did] anything about it. The machine [was] owned by Ward Vending Company and the only access to the machine was by employees of Ward Vending Company." While the evidence disclosed that Ward paid a percentage of the profit from the operation of the vending machines to Barry, the money itself belonged to Ward. Hence, there was a fatal variance, because the State charged larceny of property belonging to Barry, but proved larceny of property belonging to Ward. In view of this, the defendant's motion for judgment as of nonsuit should have been sustained as to the charge of larceny. *State v. Law*, 227 N.C. 103, 40 S.E. 2d 699; *State v. Brown*, 263 N.C. 786, 140 S.E. 2d 413.

[6]  The defendant's third contention is that the trial court committed error in its charge to the jury. The trial court, referring to the involvement of two men, instructed the jury that the defendant could be convicted if he was found by the jury to be one of the two men. The defendant contends that there was no evidence of another

man being involved and that this, therefore, was prejudicial to him. However, the testimony of Whaley was sufficient to justify this charge. We have reviewed all of the defendant's exceptions to the charge, and we do not find any prejudicial error.

Reversed as to the charge of larceny.

Affirmed as to the charge of breaking and entering.

MALLARD, C.J., and MORRIS, J., concur.