STATE v. BARRETT

[228 N.C. App. 655 (2013)]

STATE OF NORTH CAROLINA
v.
JEFFERY JAMES BARRETT

No. COA12-1530

Filed 6 August 2013

1. **Evidence—prior statements—corroboration—minor inconsistencies**

   The trial court did not commit plain error in an indecent liberties with a child case by admitting prior statements made by the victim for corroboration. The prior statements generally tracked her trial testimony, all of the challenges were to minor inconsistencies, and slight variances went to the weight of the evidence.

2. **Evidence—prior crimes or bad acts—defendant's date of birth from prior unrelated arrest**

   The trial court did not commit prejudicial error in an indecent liberties with a child case by admitting into evidence law enforcement's record of defendant's date of birth as a result of prior unrelated arrests. There was no reasonable possibility that had the challenged testimony by a detective not been admitted, the jury would have reached a different result

3. **Probation and Parole—special conditions of probation form—clerical error—reportable conviction involving sexual abuse of minor**

   There was no indication the trial court committed a clerical error in its written judgment precluding defendant from residing with his minor children in an indecent liberties with a child case. However, the case was remanded for correction of a clerical error on the special conditions of probation form where the trial court failed to mark the box indicating that a reportable conviction involved the sexual abuse of a minor.

Appeal by defendant from judgment entered 22 August 2012 by Judge Anna M. Wagoner in Union County Superior Court. Heard in the Court of Appeals 22 April 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Olga Vysotskaya, for the State.*

*Andrew L. Farris for defendant-appellant.*

BRYANT, Judge.

Where the victim's pre-trial statements were admitted to corroborate her trial testimony and generally tracked her trial testimony, we find no error. Where the fact that law enforcement had a record of defendant's date of birth as a result of prior unrelated arrests was admitted into evidence, we find no prejudicial error. Where there is no indication the trial court committed a clerical error in its written judgment precluding defendant from residing with his minor children, we overrule defendant's argument. However, we remand for correction of a clerical error on the special conditions of probation form where the trial court failed to mark the box indicating that a reportable conviction involved the sexual abuse of a minor.

On 3 December 2009, defendant Jeffery James Barrett was arrested and subsequently indicted on charges of taking indecent liberties with a child and giving fortified wine to a person under twenty-one years of age. A trial commenced in Union County Superior Court during the session beginning 20 August 2012, the Honorable Anna M. Wagoner, Judge presiding.

At trial, the State presented evidence which showed that on 21 August 2009, the victim, a fifteen year old girl named Lucy[1], was living with her adoptive mother and two older foster brothers in Wingate, N.C. One of the foster brothers was defendant Jeffery Barrett, who was thirty-nine years old.

On 21 August 2009, defendant invited Lucy to watch a ballgame at Walter Bickett Stadium in Monroe, N.C. When they arrived at the ballpark around 9:30 p.m., the game had ended. Defendant then drove to a gas station/convenience store and purchased an apple-flavored drink that he shared with Lucy. Lucy testified the beverage tasted like alcohol and made her feel "[w]oozy." Defendant then drove Lucy to Dickerson Park, an area with which Lucy was unfamiliar. At the park, defendant told Lucy "I want to show you something." Defendant lowered the back of Lucy's car seat and started to kiss her neck. Defendant repeated "I want to show you something[.]" Lucy testified that when she asked what it was, defendant touched her breast and rubbed her vagina, through her clothing. Lucy testified that she asked him to stop more than two times, but defendant continued. Defendant then told Lucy he wanted to lick her, at which point Lucy pushed defendant off of her and ran from the car, out of the park. Lucy ran until she came to a police station,

---

1. A pseudonym has been used to protect the identity of the victim.

which she found locked, then continued running until she came to a convenience store.

A store clerk, Estella Segura, testified that she was working at the Sunoco gas station on Franklin Street in Monroe during the evening of 21 August 2009. She identified Lucy as the young woman who came into the store that evening.

> A.  She came in – I guess she was running because she came in fast through the door. She was shaky, she was kind of like – looked like she was crying.
>
> Q.  Did she seem upset?
>
> A.  Yes.
>
> Q.  Did she talk to you?
>
> A.  Not too much. She just – what she said – she just told me what – what she – what happened . . . .
>
> . . .
>
> She said her brother had tried to rape her.

Segura called the police. Detective Katherine Hower with the Monroe Police Department received a call from the police communications center reporting a possible rape shortly before midnight. Det. Hower responded to the call, and spoke with Lucy at the convenience store and then again at the police station. Detective Hower testified to the events that occurred that night as they were related to her by Lucy.

Detective Shannon Huntley, an officer in the Monroe Police Department who was assigned to the juvenile investigations unit, also interviewed Lucy and testified to statements Lucy made during the interview. Det. Huntley related that Lucy was enrolled in a school curriculum for exceptionally challenged children – "children who either are handicapped or have cognitive disabilities or typically are lower functioning individuals." Det. Huntley testified that on 21 August 2009, Lucy was fifteen years old and defendant was thirty-nine years old.

Following the presentation of the State's evidence, the trial court granted defendant's motion to dismiss the charge of giving fortified wine to a person less than twenty-one years old. Defendant did not present any evidence. Following the close of all the evidence, the jury returned a verdict of guilty on the charge of taking indecent liberties with a child. The trial court entered judgment in accordance with the jury verdict and sentenced defendant to an active term of seventeen to twenty-one

months. The trial court then suspended the sentence and placed defendant on supervised probation for a period of thirty months, including special conditions. Defendant appeals.

---

On appeal, defendant raises the following issues: (I) whether the trial court committed plain error by admitting prior statements made by Lucy for corroboration; (II) whether defendant was prejudiced by the admission of a reference to his prior unrelated arrests; and (III) whether a clerical error was made on defendant's judgment and commitment order.

*I*

**[1]** First, defendant argues the trial court committed plain error by admitting prior statements made by the victim for corroboration where they directly contradicted trial testimony, added significant new evidence, and were offered for the truth of the matter asserted. We disagree.

### Standard of Review

At trial, the prosecutor for the State questioned store clerk Estelle Segura, Det. Hower, and Det. Huntley each about statements Lucy made on the night of 21 August 2009 or during the ensuing investigation. Defendant objected to each question as calling for a hearsay response. The trial court overruled each objection, allowing the witness to testify for purposes of providing corroboration. Following the testimony, defendant failed to object and move to strike the testimony on the basis of inconsistent or contrary testimony that failed to corroborate Lucy's trial testimony.

Now, on appeal, defendant argues that the testimony admitted for purposes of corroboration directly contradicts Lucy's trial testimony, adds significant new evidence, and was offered for the truth of the matter asserted. Because this argument against the admission of trial testimony was not presented before the trial court, we review it only for plain error.

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error

has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (citation and quotations omitted) (original emphasis).

## Analysis

"Corroborative testimony is testimony which tends to strengthen, confirm, or make more certain the testimony of another witness." *State v. Williams*, 363 N.C. 689, 703, 686 S.E.2d. 493, 503 (2009) (citation and quotations omitted). "To this end, trial judges in this state generally have wide discretion in admitting evidence which they determine to be helpful to a jury appraisal of credibility." *State v. Stills*, 310 N.C. 410, 415, 312 S.E.2d 443, 446 (1984) (citation omitted). "It is well established that a witness' prior consistent statements may be admitted to corroborate the witness' sworn trial testimony but prior statements admitted for corroborative purposes may not be used as substantive evidence." *State v. Gell*, 351 N.C. 192, 204, 524 S.E.2d 332, 340 (2000). "If the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible. Such variations affect only the credibility of the evidence which is always for the jury." *Williams*, 363 N.C. at 704, 686 S.E.2d at 503 (citation and brackets omitted).

"Our prior statements are disapproved to the extent that they indicate additional or 'new' information, contained in the witness's prior statement but not referred to in his trial testimony, may never be admitted as corroborative evidence." *State v. Locklear*, 172 N.C. App. 249, 256, 616 S.E.2d 334, 339 (2005) (quoting *State v. Ramey*, 318 N.C. 457, 468–69, 349 S.E.2d 566, 573–74 (1986)). Our North Carolina Supreme Court has held that allowing admission of prior statements that vary from witness testimony is not error if the two accounts "generally tracked [each other] and [were] not contrary to or inconsistent with [each other]." *Williams*, 363 N.C. at 704, 686 S.E.2d at 503.

Defendant cites *State v. Burton*, 322 N.C. 447, 368 S.E.2d 630 (1988); *Stills*, 310 N.C. 410, 312 S.E.2d 433; and *State v. Fowler*, 270 N.C. 468, 155 S.E.2d 83 (1967), as cases where the admission of a witness's out of court statements held inconsistent with a witness's trial testimony resulted in prejudicial error compelling a new trial.

In *Burton*, the defendant claimed that he shot two men in the defense of another who was being beaten while pinned to the ground. 322 N.C. 447, 368 S.E.2d 630. At trial, the State's witness testified that one of the defendant's victims was positioned on top of a man, trying to strike that man in the face when the defendant fired his gun. *Id.* at 449, 368 S.E.2d at 631. The State also admitted over objection following a voir dire an audio recording of the witness's statement to police made shortly after the shooting. In his statement to police, the witness reported that the defendant's victim was "flat down on his back" when he was shot. *Id.* at 449, 368 S.E.2d at 632. The Court reasoned that the witness's recorded police statement contradicted rather than corroborated his trial testimony, and moreover, the defendant was prejudiced by the error of admission as his only defense was that he acted in the defense of another. *Id.* at 451, 368 S.E.2d at 632-33.

In *Stills*, the defendant was charged with taking indecent liberties with a minor and first-degree sexual offense. 310 N.C. 410, 312 S.E.2d 443. Two witnesses testified against the defendant on the basis of first-hand observation. The State also called six witnesses to give corroborating testimony. Over objection, some "corroborating" witnesses testified to out-of-court statements made by other corroborating witnesses: in other words they were allowed "to corroborate, the corroboration." *Id.* at 413, 312 S.E.2d at 445. The Court held that the trial court committed prejudicial error in admitting "corroborative" testimony that not only did not corroborate but in some instances contradicted the substantive testimony and introduced new evidence. *Id.* at 416, 312 S.E.2d at 447. The Court reasoned that while corroborating testimony could be corroborated, introducing hearsay statements "three or four times removed from the original declarant under the guise of corroborating the corroborative witness [was] unacceptable." *Id.*

In *Fowler*, the defendant was convicted of first-degree murder and sentenced to death. 270 N.C. 468, 155 S.E.2d 83. At trial, one witness testified to observing the defendant shoot a police officer following a scuffle for the officer's gun. The State also called another officer who took the witness's statement after the shooting. *Id.* at 470, 155 S.E.2d at 85. The testimony of the officer-witness admitted for the purpose of corroboration, indicated that the defendant pointed the gun at the officer and told the officer that "he was sorry but he had to do this." *Id.* The Supreme Court reasoned that the officer witness's testimony expressed "deliberation and a pre-fixed purpose to kill" which not only did not corroborate, but contradicted the other witness's trial testimony. The Court determined that the erroneous admission of this out of court statement

may have been the difference between a sentence of life in prison and the death penalty, and therefore, the defendant was granted a new trial. *Id.* at 471, 155 S.E.2d at 86-87.

Here, defendant challenges as non-corroborative certain testimony by Det. Hower and Det. Huntley, each of whom related statements Lucy made to that officer during the police investigation.

Lucy testified that after she and defendant left the baseball field at Walter Bickett Stadium, defendant drove to a convenience store.

> A.   Well, after he took me to the ballgame and everybody was leaving, then he drove to the store.
>
> Q.   Okay, to – when you say a store, is it like a gas station store?
>
> A.   A convenience store.

Det. Hower interviewed Lucy the night of 21 August 2009. At trial, Det. Hower gave the following testimony regarding what Lucy had stated to her on that night.

> When they arrived at the ballgame, it was apparent that it was over; everybody was coming out of the ballgame. So he promised her that he'd take her to the next ballgame. At that time she stated that they rode around and he stopped at two different stores. They stopped at Morgan Mill Shell and at Five Points, which is close to the vicinity of where she was at at that time when I picked her up. She said he went into the store and purchased beer and something that tasted like apple juice.

Det. Huntley testified that Lucy stated to her that "[t]he ballgame was over. After the ballgame, they had ridden around and stopped at several convenience stores." Although the testimony of Det. Hower was more expansive, we do not find the testimony of Det. Hower or Det. Huntley to be contrary to Lucy's trial testimony.

Defendant also challenges whether Det. Huntley's testimony describing the park corroborates Lucy's testimony. Lucy described the park defendant drove her to as follows:

> Q.   Can you describe the park to us?
>
> A.   No, I can't.
>
> Q.   Okay. Was it – did it have houses around it?

A.   No.

Q.   Did it have any other type of building?

A.   No.

Q.   Do you remember if it had a swing set or any type of play set?

A.   Yeah.

Q.   What did it have?

A.   It had a swing set.

Q.   Do you remember, was it dark?

A.   Yes, it was dark.

Q   Could you see house lights or building lights around it?

A.   Yes.

Q.   Okay. So there was some type of building that you could at least see the lights [of] the park?

A.   Yeah.

Q.   Okay. Do you remember, was it heavy with trees? I mean was it pretty foresty [sic] or was it more like a yard?

A.   It was more like a yard.

Q.   Okay. Do you remember anything else from the park – bridge; any type of bridge or?

A.   No.

Det. Hower testified that in her interview with Lucy, Lucy described the park defendant took her to after the convenience store.

> [S]he was a little unsure of the park, so I had [Lucy] describe the park to me. [Lucy] described the park as being – having a ball field, it had picnic tables, it had a fence, but then it had a gate with buses. She also described it having a small bridge that you could walk over. Now, since I work that area, I knew that that sounded like Dickerson Park.

While Det. Hower's testimony provided additional facts in describing the park, including the existence of a bridge which Lucy did not remember

during her trial testimony, Det. Hower's testimony was not contrary to or inconsistent with Lucy's trial testimony.

Defendant also challenges what he argues is an inconsistency between Lucy's testimony regarding defendant's position in the car at the time of the assault and the testimony of Det. Huntley. Lucy testified that she sat on a swing at the park and then told defendant she was ready to go home. She asked if she could drive.

Q.  . . . So after he agreed to let you drive, you got back in the car?

A.  Yes.

Q.  And where were you sitting?

A.  In the driver's seat.

Q.  Okay. And where was the defendant?

A.  In the passenger seat.

Q.  Okay. And what happened at that point, once you got in the car?

A.  He let the seat back.

Q.  Okay. The -- you mean like where your back is?

A.  Yeah.

Q.  So you kind of laid down a bit more?

A.  Yes.

Q.  Okay. And you said he started kissing on your neck?

A.  Yes.

Det. Huntley testified as follows regarding Lucy's statement: "She said that they had went to the park, and then had proceeded to say [sic] that he told her that she could drive. And she got into the passenger seat. He reached over, laid the seat down . . . ."

Despite the inconsistency between Lucy's testimony and Det. Huntley's testimony as to which seat Lucy occupied in the vehicle, Det. Huntley's testimony regarding the sequence of events occurring in the vehicle generally tracked Lucy's trial testimony and was not contrary to nor inconsistent in any significant way with Lucy's testimony.

Defendant further argues that there was an inconsistency between Lucy's testimony and Det. Huntley's corroborating testimony regarding whether defendant was intoxicated.

> Q.   Okay. [Lucy], that night when the defendant picked you up at your house, do you know, had he been drinking?
>
> A.   Yes.
>
> . . .
>
> Q.   And was he acting in a way that indicated to you that he was drunk based upon your prior experiences with him?
>
> A.   No.
>
> Q.   No, he didn't.
>
> A.   No.
>
> Q.   So how do you know he was drunk?
>
> A.   Because I could smell it on his breath.

Det. Huntley testified, as follows: "And she also said that in addition to what Detective Hower had written in her report, she had stated that Mr. Barrett -- she thought in her opinion that Mr. Barrett was under the influence of alcohol or that he was drunk."

We have reviewed all of defendant's challenges to the testimony of the corroborating witnesses and find that all of the challenges are to minor inconsistencies. *See State v. Quarg*, 334 N.C. 92, 431 S.E.2d 1 (1993) (finding inconsistences and contradictions between trial testimony and testimony admitted for purposes of corroboration to be minor and insignificant, not prejudicial). These inconsistences are far removed from those found to be the basis for prejudicial error in *Burton, Stills,* and *Fowler.* Further, as we have noted in *Williams,* "slight variations . . . affect only the credibility of the evidence which is always for the jury." *Williams,* 363 N.C. at 704, 686 S.E.2d at 503 (citation omitted). Defendant's arguments are overruled.

## II

[2] Defendant next argues that testimony by a witness for the State referring to defendant's previous arrests served only to show a propensity for criminal conduct and thus was a violation of Rule 404(b). Defendant further contends that based on his previous argument – that the State's

case-in-chief was comprised of inconsistent testimony – there is a reasonable possibility the jury would have reached a different verdict had the testimony regarding defendant's prior arrests not been improperly admitted. We disagree.

Defendant argues that the testimony admitted into evidence against him violated Rule 404(b) of our Rules of Evidence and was "[i]mproperly admitted evidence of prior bad acts [and] is inherently prejudicial." *See* N.C. Gen. Stat. § 8C-1, Rule 404(b) (2011) (stating in part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.").

Citing *State v. Davis*, ___ N.C. App. ___, 731 S.E.2d 236 (2012), and *State v. Gray*, ___ N.C. App. ___, 709 S.E.2d 477 (2011), as cases where this Court has held that there existed a reasonable possibility of a different verdict had improperly admitted evidence been excluded at trial, defendant asserts that as in Gray, Lucy's "testimony was inconsistent internally and as presented over time through statements the child made to others who testified at trial." Defendant argues that testimony given by Det. Huntley indicating that he had prior arrests "bolstered the State's hearsay evidence over [Lucy's] actual testimony and, consequently, there is a reasonable possibility that the jury would have reached a different verdict had it not been improperly admitted."

We note for the record that the challenged evidence was not admitted as 404(b) evidence, but offered as proof of defendant's age. Defendant was charged with taking indecent liberties with a child in violation of the General Statutes, section 14-202.1. Among other elements, the State had to prove that defendant was "16 years of age or more and at least five years older than the child in question[.]" N.C. Gen. Stat. § 14-202.1 (2011). In attempting to establish defendant's age, the following exchange took place between the prosecutor and Det. Huntley:

> Q.   Okay. And what did you know his date of birth to be?
>
> [Defense counsel]: Objection, Your Honor; hearsay, no foundation.
>
> THE COURT: I'll sustain –
>
> Q.   Okay, what if – you said you obtained a warrant for the defendant's arrest. What if anything happened next?
>
> A.   The warrant went into the police system and it wasn't until later that Mr. Barrett was arrested for the offense.

Q. Okay. How did you get the defendant's information?

A. Mr. Barrett was already in the police system.

Q. Okay.

A. From prior arrests.

Q. Okay. And what was the date of birth –

[Defense counsel]: I'd ask that be stricken, Your Honor.

THE COURT: Overruled.

Q. What – based upon the information that you gathered from the defendant, what was the date of birth that you discovered in his information?

A. January 1st of 1970.

Q. How old was Mr. Barrett on August 21st, 2009?

A. Thirty-nine.

Q. How old was [Lucy]?

A. Fifteen.

Q. That's twenty-four years older; is that correct?

A. Yes, ma'am.

Even presuming that the admission of Det. Huntley's testimony indicating that the Monroe Police Department had a record of defendant's date of birth "[f]rom prior arrests" could be considered 404(b) evidence, it was clearly admissible to show a fact other than defendant's character. *See e.g., State v. Weaver*, 318 N.C. 400, 348 S.E.2d 791 (1986). Further, we also find unpersuasive defendant's argument that there is a reasonable possibility the jury's guilty verdict on the charge of taking indecent liberties with Lucy would have been affected had the testimony been struck from the jury's consideration. There was no indication given of the nature of defendant's acts which resulted in arrest and no indication defendant had been convicted. Moreover, the detail shared by Lucy in her testimony describing the assault by defendant, along with the testimony given by Segura, Det. Hower, and Det. Huntley, was sufficient to prove the elements of the offense. Therefore, we do not find a reasonable possibility that, had the challenged testimony by Det. Huntley not been admitted, the jury would have reached a different result. Accordingly, defendant's argument is overruled.

*III*

**[3]** Next, defendant argues the trial court made a clerical error that creates a conflict between the trial court's oral ruling and its written judgment. Defendant contends that the trial court's ruling announced in open court allowed him to reside with his minor children while the written judgment specifies that defendant "not reside in a household with . . . any minor child." We disagree.

Following the announcement of the jury verdict finding defendant guilty of taking indecent liberties with a child, the trial court sentenced defendant to an active term of seventeen to twenty-one months. The trial court then suspended defendant's sentence and placed him on supervised probation for a period of thirty months. We note that the crime of taking indecent liberties with a minor, as defined by N.C.G.S. § 14-202.1, is a sexually violent offense pursuant to N.C. Gen. Stat. § 14-208.6(5) (2011) and thus a "reportable conviction" pursuant to section 14-208.6(4).

Pursuant to North Carolina General Statutes, section 15A-1343, "Conditions of probation,"

> a defendant who has been convicted of an offense which is a reportable conviction as defined in G.S. 14-208.6(4), or which involves the physical, mental, or sexual abuse of a minor, must:
>
> . . .
>
> (4) Not reside in a household with any minor child if the offense is one in which there is evidence of sexual abuse of a minor.
>
> (5) Not reside in a household with any minor child if the offense is one in which there is evidence of physical or mental abuse of a minor, unless the court expressly finds that it is unlikely that the defendant's harmful or abusive conduct will recur and that it would be in the minor child's best interest to allow the probationer to reside in the same household with a minor child.

N.C. Gen. Stat. § 15A-1343(b2) (2011) (entitled "Special Conditions of Probation for Sex Offenders and Persons Convicted of Offenses Involving Physical, Mental, or Sexual Abuse of a Minor").

In announcing the provisions of defendant's probation, the trial court questioned defendant about his children:

**STATE v. BARRETT**

[228 N.C. App. 655 (2013)]

THE COURT: He is to abide by all the rules and regulations of the sex offender control program -- how old are your children?

MR. BARRETT: Twenty-one, eighteen, seventeen, thirteen, seven, and six.

THE COURT: Does the State contend he should have no contact with the children under the age of eighteen unless --

. . .

THE COURT: It appears that he is Static 99 -- form has been conformed and that he's found to be a low risk for reoffending. Anything further as to that?

MS. SULLIVAN: No, Your Honor.

THE COURT: Yes, sir.

MR. STERMER: Yes, because of that, Your Honor, we would ask that he be allowed to have contact -- under the statute, as I understand, he can't have contact with any minor under eighteen years of age. We'd ask that the Court make the only exception for his children.

THE COURT: You have any argument with that?

MS. SULLIVAN: No, Your Honor, I'll leave it to your discretion.

. . .

THE COURT: Okay. And I will modify -- note that he is the father -- you have eight children in all?

JEFFERY JAMES BARRETT: Six.

THE COURT: Six children?

JEFFERY JAMES BARRETT: Yes, ma'am.

THE COURT: Four that are under the age of eighteen; is that correct?

. . .

THE COURT: Four children under the age of eighteen with whom he resides; is that correct? Do you live with them?

MR. STERMER: Two of them.

JEFFERY JAMES BARRETT:  Two of them.

THE COURT:  That the Court will modify the special conditions for sex offenders to allow him to have contact with his four natural children.

In the judgment entered, the trial court found that defendant was convicted of a reportable conviction as defined by G.S. § 14-208.6(4) and pursuant to G.S. § 15A-1343(b2) (Conditions for probation) must "[n]ot reside in a household with any minor child." [R. 39]. But, in its judgment under the heading "Special Conditions of Probation – G.S. 15A-1343(b1), 143B-704(c)," the trial court "allow[ed] contact with [defendant's] natural children[.]"

To the extent that defendant contends the trial court ordered that he be allowed to reside with his minor children, we find no support for this in the record and therefore, overrule the argument.

In response to defendant's argument, the State contends that the trial court made a clerical error in selecting physical or mental abuse, as opposed to sexual abuse, on the judgment form Mandatory Special Conditions for Sex Offenders and Persons Convicted of Offenses Involving Physical, Mental, or Sexual Abuse of a Minor. We note that on the first page of the judgment form suspending defendant's felony sentence and imposing probation, the trial court checked box number 8, finding that defendant's offense involved both the physical or mental abuse and the sexual abuse of a minor. On the judgment form mandating special conditions for sex offenders, the trial court selected only the box indicating defendant's offense involved the physical or mental abuse of a minor, and failed to also select the box indicating the offense involved the sexual abuse of a minor. Therefore, we remand this matter for correction of a clerical error, failing to check the box on the Mandatory Special Conditions for Sex Offenders and Persons Convicted of Offenses Involving Physical, Mental, or Sexual Abuse of a Minor form indicating that defendant's offense involved the sexual abuse of a minor, in accordance with the trial court's findings on page one of the judgment. *State v. Lark*, 198 N.C. App. 82, 95, 678 S.E.2d 693, 702 (2009) ("A clerical error is '[a]n error resulting from a minor mistake . . . in writing or copying something on the record, and not from judicial reasoning or determination." (citation omitted)).

No error at trial; remanded for correction of clerical error.

Chief Judge MARTIN and Judge DAVIS concur.